(November 23, 1910.)

## JOHN KEATING, Appellant, v. THE KEATING MINING CO. et al., Respondents.

[112 Pac. 206.]

Mining Claims—Sale of—Fraud and Conspiracy—Mortgage—Fore-closure of—Finding of Facts—Sufficiency of Evidence—For-eign Corporation—Filing Articles—Designation of Agent—Taking .Title to Real Estate—Purchase Price—Rescission—Laches.

(Syllabus by the court.)

1. The evidence held sufficient to sustain the finding of facts.

2. Where a seller receives the entire purchase price of the property sold and acquiesces in the transaction after he has had full knowledge of all the facts concerning it, he is estopped from a rescission of the contract by reason of his laches and neglect.

3. Where an owner has sold and conveyed real estate, and has received the purchase price therefor, he can neither legally nor equitably question the capacity of the vendee to take and hold the title.

APPEAL from the District Court of the First Judicial District, for Shoshone County. Hon. W. W. Woods, Judge.

Action to recover title to certain mining claims. Judgment for defendants. *Affirmed.*

A. G. Kerns, for Appellant.

"Laches cannot be imputed to one in the peaceable possession of land for delay in resorting to a court of equity to cor-

rect a mistake in the description of premises in a conveyance through which title must be deduced. The possession is notice to all of the possessor's equitable rights, and he needs to assert them only when he may have occasion to do so." (*Ruckman v. Cory*, 129 U. S. 387, 9 Sup. Ct. 316, 32 L. ed. 728; *Brainard v. Buck*, 184 U. S. 99, 22 Sup. Ct. 458, 46 L. ed. 449; *Underwood v. Dugan*, 139 U. S. 380, 11 Sup. Ct. 618, 35 L. ed. 197.)

The record shows that during all of the period after March, 1906, the plaintiff was seeking to secure his money for the property, and that the delay in commencing the suit was caused by the defendants. "A plaintiff cannot be chargeable with laches caused by the defendants." (*Gunton v. Carroll*, 101 U. S. 426, 25 L. ed. 985.)

"A statute of limitation declaring the time within which action shall be commenced for relief on the ground of fraud applies to actions for relief from judgments obtained by fraud and conspiracy; and if commenced within the time therein limited, an action cannot be treated as barred by laches." (*Lang Syne G. M. Co. v. Ross*, 20 Nev. 127, 19 Am. St. 337, 18 Pac. 358; 2 Pom. Eq. Jur. 608.)

The Keating Mining Co. never acquired any title to the property involved herein, because it had not complied with the law relative to foreign corporations. (*Katz v. Herrick*, 12 Ida. 1, 86 Pac. 873; *Tarr v. Western L. & S. Co.*, 15 Ida. 741, 99 Pac. 1049.)

John P. Gray, and Featherstone & Fox, for Respondents.

Keating is seeking in this action a rescission of the contract of March 21, 1906. He is barred by his laches and by his ratification.

Any deliberate act on his part, done with the full knowledge of his rights, inconsistent with an intention to rescind, and in effect taking advantage of the sale for his own benefit, will constitute an election to affirm the sale, by which he will be bound. (*Emma etc. Co., Ltd., v. Emma etc. Co.*, 7 Fed. 401; *McLean v. Clapp*, 141 U. S. 429, 12 Sup. Ct. 29, 35 L. ed. 804; 29 Am. & Eng. Enc. Law, 2d ed., 675.)

The right to rescind has been denied where after knowledge that the contract was voidable he extended the time of performance (*Kraner v. Chambers*, 92 Iowa, 681, 61 N. W. 373; *Hawes v. Swanzey*, 123 Iowa, 51, 98 N. W. 586; *Herman v. Greseke* (Tex. Civ.), 33 S. W. 1006); and where he makes use of the consideration (*Perry v. Pearson*, 135 Ill. 218, 25 N. E. 636; *Dunks v. Fuller*, 32 Mich. 242; *Campbell v. Foster*, 2 Tenn. Ch. 402; *Watson v. Baker*, 71 Tex. 739, 9 S. W. 867); and where he voluntarily delivers possession (*Hatch v. Ferguson*, 57 Fed. 959); also, where others have acquired an interest in the property (*Litchfield v. Browne*, 70 Fed. 141, 17 C. C. A. 28; *Hurt v. Miller*, 95 Va. 32, 27 S. E. 831; *Emma Silver Mine Co. v. Emma Silver Mine Co. of N. Y.*, 7 Fed. 401). The right to rescind has been denied in Idaho on the ground of estoppel. (*Eastwood v. Standard Mines Co.*, 11 Ida. 195, 81 Pac. 382.)

The court in this case, upon all the evidence, found that Keating was guilty of laches, which, even if his claims were true, would bar him from relief. (16 Cyc. 152, 162; *Patterson v. Hewitt*, 195 U. S. 309, 25 Sup. Ct. 35, 49 L. ed. 214; *Johnston v. Standard Min. Co.*, 148 U. S. 360, 13 Sup. Ct. 585, 37 L. ed. 480; *Idaho Gold Mines Co. v. Union Mines Co.*, 5 Ida. 107, 47 Pac. 95; *Hammond v. Wallace*, 85 Cal. 522, 20 Am. St. 239, 24 Pac. 837; Kerr, Mistake and Fraud, Bump's ed., pp. 302–306; *Twin Lick Oil Co. v. Marbury*, 91 U. S. 587, 23 L. ed. 329.)

SULLIVAN, C. J.—This action was brought to restrain the sheriff of Shoshone county and his successors in office from executing or delivering to the defendant Goodsell, or his assigns, a sheriff's deed conveying the Golden Curry, the Savage, the Savage No. 2, the Grouse and the Minnie Moore lode mining claims situated in the Yreka mining district, Shoshone county; and to vacate and set aside a deed dated November 20, 1905, made by John Keating to J. Frank Watson, conveying to said Watson the aforesaid mining claims; also to set aside a deed dated August 15, 1906, executed by the said Watson and wife to the Keating Mining Co., conveying said described mining claims to said company; and to set aside and

hold for naught a certain mortgage upon said mining claims executed by the said Keating Mining Co. to the defendant David Goodsell; and to set aside a certain judgment rendered February 17, 1908, in the district court of Shoshone county in an action wherein the said Goodsell was plaintiff and the said Keating Mining Co., defendant, which judgment directed the foreclosure of the aforesaid mortgage; and to quiet the title to said mining claims in the plaintiff, John Keating, or in case said relief could not be granted, then that the plaintiff be awarded a vendor's lien against said mining claims to secure to him the payment of the sum of $22,500, together with interest, and that such vendor's lien be given priority over all other liens against said mining claims, and for other relief.

The pleadings put in issue certain transactions between defendants J. Frank Watson, P. J. and R. J. Jennings, and it is alleged in the complaint that a conspiracy was entered into by said three defendants with the intent to cheat and defraud the plaintiff out of said mining claims without paying the agreed purchase price therefor; and it is also alleged that the defendant Goodsell procured a mortgage for $16,000 on said property for the purpose of cheating and defrauding the plaintiff out of said mining claims and the purchase price therefor. By amendment to the complaint, it is alleged that said Keating Mining Co. is a foreign corporation, and at the time J. Frank Watson and wife conveyed said mining claims to said corporation it had not complied with the constitution and laws of this state in regard to filing its articles of incorporation and designating an agent upon whom service of process might be made, and that for that reason it took no title to said property through said conveyance.

Upon the issues made by the pleadings, the cause was tried by the court and finding of facts was made and judgment entered in favor of the respondents. The appeal is from the judgment.

STATEMENT.

It appears from the record that sometime in 1905, appellant gave an option to purchase certain mining claims owned by him near Wardner, Idaho, to a man named Devin. About

November 1st of that year, Devin interested respondent P. J. Jennings in the property and introduced him to the appellant Keating. After some negotiations with Keating and Devin, Jennings went to Portland, Oregon, and presented the matter to respondent J. Frank Watson, a banker. It appears that Jennings represented to Watson that Keating wanted $25,000 for said mining claims, to be paid as follows: $2,500 in cash, $2,500 in June, 1906, and $20,000 in a year, and that if Watson would put up $2,500 in cash and take care of the payroll in the development of said mining claims for ninety days, that he (Jennings) thought they could turn the property and make some money. After considering the matter, Watson agreed to put up the $2,500 in cash and take care of the payroll for ninety days. Jennings then went to Wardner and met Keating and Devin, and after certain negotiations with them they returned to Portland with him, at which place they called on Watson, and the following agreement was entered into by Keating and Watson:

"Memorandum of agreement made between John Keating of Wardner, Shoshone County, Idaho, hereinafter called the first party, and J. Frank Watson, Trustee, of Portland, Oregon, hereinafter called the second party,

"WITNESSETH; The first party agrees to sell to the second party the following lode mining claims situated in Yreka Mining District in Shoshone County, Idaho, as follows, to wit:

"The Golden Curry and the Savage, as described by United States patent; also the Eastern Extension of said Savage, known as 'Savage No. 2'; the Eastern extension of Golden Curry, known as 'The Grouse'; and the Western Extension of the Savage, known as 'Minnie Moore,' for the sum of Twenty-five Thousand Dollars ($25,000.00) payments to be made as follows:

"On or before December 8, 1905...............$ 2,500.00
"On or before June 8, 1906.................. 2,500.00
"On or before December 8, 1906............... 20,000.00

"Said first party agrees to furnish an abstract of title showing a good, clear and unencumbered title to each of said claims; the title to be satisfactory to, and subject to the ap-

proval of said second party; and also, upon the payment of the first twenty-five hundred dollars, to deposit, in escrow, at the Merchants National Bank of Portland, Oregon, a deed to said five claims, free and clear of all liens and incumbrance and showing a clear title thereto, executed to said second party.

"It is further agreed between the parties hereto that if any of the payments above mentioned are not made at the time when due, then the payments which shall have been made shall be forfeited, and that this agreement shall thereupon become void and of no effect.

"The second party agrees to work at least sixty (60) shifts per month, beginning on or before December 9, 1905, and to deposit the actual net proceeds of ore mined, after paying all the expenses incident to the production thereof, to the credit of the first party to apply on the purchase price of said mining claims; and to render said first party monthly statements of any and all ore shipped; said second party to have the right to work the property in mine fashion as to him seems best.

"The first party is to have access to the property at any time during the life of this agreement for the purpose of inspection of the work.

"IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals in duplicate, this 9th day of November, 1905.

"(Seal)     JOHN KEATING.
"(Seal)     J. FRANK WATSON."

Thereupon Watson made the first payment of $2,500 to Keating and a deed for the mining claims in favor of Watson was deposited in the Merchants' National Bank of Portland in escrow. Watson acted as trustee. Work was commenced on the mining claims and Watson advanced the money to carry on such work until about the month of March, 1906. Prior to that date Watson had advised Jennings that he had already put up more money than he had anticipated would be necessary, and that he would not continue to put up money, as he could not see the outcome, as no ore had yet been discovered.

Jennings thereupon went to Wardner, inspected the property and advised the appellant that Watson was not willing to advance any more money on said agreement.   Jennings thereupon agreed with the appellant that if he would convey said mining claims, he would have organized a mining company for the purpose of owning and developing the same, and would pay Keating 60,000 shares of the capital stock of the Standard Development Co., and in addition thereto, 100,000 shares of the capital stock of the mining company to be organized to take over said Keating mining claims; or, in lieu of the 100,000 shares, $7,500 in cash.   It seems that Keating agreed to this, and returned with Jennings to Portland, Oregon, and an interview was had with said Watson, and thereupon the following agreement was entered into by P. J. Jennings and John Keating, to wit:    ·

"THIS AGREEMENT made and entered into this twenty-first day of March, 1906, by and between John Keating of Wallace, Idaho, and P. J. Jennings of Portland, Multnomah county, Oregon,

"WITNESSETH, That whereas under the conditions of a certain escrow agreement now on deposit with the Merchants National Bank, Portland, Oregon, between said John Keating and J. Frank Watson, it is provided that the following amounts shall be paid by said J. Frank Watson to said John Keating, viz.:

"Two thousand, five hundred dollars ($2,500.00) on or before June 8th, 1906, and twenty thousand dollars ($20,000) on or before December 8th, 1906, and

"Whereas, said first party has sold to said second party hereto all his right, title and interest in and to said amounts to become due on said escrow agreement for fifteen thousand dollars ($15,000), of stock in the Standard Development Company and hereby agrees that on or before December 1st, 1906, he will pay to said first party the balance or seven thousand five hundred ($7,500) dollars in cash or one hundred thousand shares (100,000) of the capital stock of a Corporation to be formed covering the said mining claims, which capital stock

shall be one million (1,000,000) shares of $1.00 par value each.

"IN WITNESS WHEREOF, the parties hereto have signed these presents this day and year first above written.

"JOHN KEATING,<br>
"P. J. JENNINGS."

It is alleged in the complaint that at the time said last-mentioned agreement was made, R. J. and P. J. Jennings and Watson, respondents, made a verbal agreement with Keating to pay him $2,500 in addition to the consideration mentioned in said agreement. On March 21, 1906, the date when said last-mentioned agreement was executed, the appellant Keating directed by letter the Merchants' National Bank of Portland to deliver the deed theretofore placed in escrow to Watson without further payment. Thereupon P. J. Jennings delivered to the appellant certificates for 60,000 shares of the capital stock of the Standard Development Co. This stock was borrowed by P. J. Jennings from his brother, R. J. Jennings. P. J. Jennings induced Watson to keep the payroll at the mine going with the expectation of interesting eastern people in the property. This Watson did until he had advanced in the neighborhood of fifteen or sixteen thousand dollars. Watson thereupon, with two mining engineers, visited and inspected said mining claims, and after said inspection declined to advance any further sums for their development and so notified Jennings.

In the month of May, 1906, Watson, together with others, caused to be incorporated under the laws of the state of Oregon the Watson Mining Co., with a capital stock of one million dollars, divided into 1,000,000 shares of the par value of one dollar each, with the intention of turning over the Keating mining claims to such corporation. But the property was not turned over to the corporation, and nothing but the mere organization of the company was effected at that time. Upon Watson's notifying P. J. Jennings that he would not advance any further sums of money in the promotion of said enterprise, said Jennings interested his brother, R. J. Jennings, in the property, and the latter thereupon, on August

1, 1906, entered into an agreement with Watson, by which he purchased all of Watson's interest in the property and in the corporation to be formed for the purpose of owning, holding and developing said mining claims. R. J. Jennings thereupon caused the name of the mining company organized as the Watson Mining Co. to be changed to the Keating Mining Co., and by direction of R. J. and P. J. Jennings, Watson, on or about August 15, 1906, conveyed by deed to the Keating Mining Co. the mining claims which had been conveyed to him by Keating, and the deed was filed for record in Shoshone county on September 27, 1906. The defendant Goodsell was requested by R. J. Jennings to become a director in said corporation, and one share of the stock of said corporation was put in his name for the purpose of qualifying him to act as a director. It appears that Goodsell had no interest in the corporation or property other than the one share of stock. Thereafter the work of developing the property was continued and the funds for the payment of such development were secured in part by sales of the treasury stock of the Keating Mining Co. and by advances and loans of money made to the corporation by R. J. Jennings. The development work on said claims continued until sometime in the summer of 1907, when the company became unable to pay its bills, and various liens for labor and supplies were filed against the property and suits were commenced to foreclose them. The mining company employed counsel to delay the foreclosure of the liens in order to give the company an opportunity to raise the money with which to pay off such indebtedness. In June, 1907, P. J. Jennings called upon the defendant Goodsell and informed him that liens had been filed against the company and that there were other debts that would have to be met, and sought to borrow from Goodsell sufficient money to pay off the indebtedness of the respondent company, and offered to secure Goodsell by a mortgage upon the property. Jennings represented to Goodsell that he was negotiating a deal with a man by the name of Henchel, whereby he expected to obtain sufficient funds to pay off the indebtedness and liens of the company and for the further development of

said property. Goodsell did not at that time give Jennings an answer. Henchel thereafter called on Goodsell and represented that he had an option on the treasury stock of said company, and that within a short time after his return from the east, he could arrange for the money to take up the treasury stock, and asked Goodsell if he could not tide the mining company over until his return. About September 1st, 1907, P. J. Jennings again called on Goodsell and stated that something would have to be done immediately, as the liens were to be foreclosed. He further advised Goodsell at that time that the Keating Mining Co. was indebted to R. J. Jennings in a sum exceeding $7,500, and that R. J. Jennings was indebted to Goodsell in the sum of $7,500 and interest, and that Jennings would assign to Goodsell his indebtedness against the company in payment of said indebtedness from R. J. Jennings, and that the company would execute a note for $16,000 and a mortgage to secure the assigned indebtedness of R. J. Jennings, and the balance, to be represented by the note and mortgage of the company, should be advanced by Goodsell for the purpose of paying off the indebtedness of the Keating Mining Co. After some further negotiations, and on or about September 4, 1907, Goodsell agreed to take an assignment of R. J. Jenning's claim against the company and advance certain money, and take a note and mortgage from the company for the assigned claim and for money to be advanced by him, and the corporation on that day, by resolution of the board of directors, empowered the president and secretary to borrow the sum of $16,000 and to execute a note therefor and mortgage to secure the same, which was done. Goodsell thereupon proceeded to Wallace, Idaho, and examined the records of Shoshone county for the purpose of ascertaining whether or not the property was in such condition as to justify him in satisfying the liens and paying out the money secured by the note and mortgage, and after satisfying himself, he filed his mortgage for record and thereupon paid off the liens and other indebtedness of the company in an amount in excess of $8,500, personally attending to the matter of paying the bills and settling the liens, at the request of the

Keating Mining Co.    Thereafter the mining company made default in the payment of said note and Goodsell, on November 9, 1907, commenced an action to foreclose the mortgage, and a judgment was entered for the sum of $17,332.48 and a foreclosure sale of the mortgaged property decreed, and on February 20, 1908, the sheriff of said county sold the property to Goodsell for the amount of the judgment and issued to Goodsell a sheriff's certificate of sale.

### THE FINDING OF FACTS.

Upon these facts and all of the evidence, the trial court found that Keating accepted and received 60,000 shares of the capital stock of the Standard Development Co. at the agreed price of twenty-five cents per share, or $15,000; that thereafter he accepted and received 100,000 shares of the capital stock of the Keating Mining Co.; that said 100,000 shares of stock were accepted by him after consulting with his attorney and deliberation on the matter, and with the full knowledge of the liens against said mining claims, and that Keating has at all times held and retained said certificates of stock since said date until during the trial of this cause. The court also found that there was no conspiracy or fraud in regard to said transaction, and that because of Keating's accepting and retaining the entire purchase price for said mining claims and his long acquiescence in said matter subsequent to the execution and recording of the mortgage to Goodsell, he is not entitled to the relief prayed for in his complaint because of his laches and neglect. Upon all of the evidence the court found that no other agreement or contract was made or entered into between the parties on the 21st day of March, 1906, except the written contract above set forth made on that day, and that "no consideration was agreed to be paid except that mentioned in said agreement in writing." The court there finds against the allegations of the complaint to the effect that the defendants had agreed orally at the time said written contract was made that they would pay Keating $2,500 in June, 1906. The court also found that the terms and conditions of said contract had been complied with, and

as to the allegations of conspiracy to defraud, the court found as follows:

"The court further finds that the allegations of the plaintiff's complaint, charging fraud and conspiracy against the defendants, is not sustained by the evidence, and finds that the defendants are not guilty of fraud or of any conspiracy to defraud the plaintiff. The court further finds that the defendant David Goodsell was guilty of no fraud in the premises, and that the said defendant David Goodsell was not a party to any conspiracy to defraud the plaintiff out of his property or to defraud the plaintiff at all."

The court found that the defendant Goodsell advanced the money and took said mortgage in good faith and for a valuable consideration, and without notice of any claim or equity of the plaintiff or any other person to the property of said Keating Mining Co., and that the same was in all respects a *bona fide* transaction. The court clearly finds that the entire transaction in regard to the negotiations for the purchase of said mining claims, the contract entered into, the deeds conveying said mining claims, the execution of said mortgage to Goodsell, were all done and performed in good faith, and the evidence is sufficient to support these findings. The finding of facts is sufficient to defeat the recovery by the plaintiff.

### FOREIGN CORPORATION.

The contention of counsel for appellant to the effect that the Keating Mining Co., being a foreign corporation, could not take title to said mining claims as shown by the facts established on the trial, for the reason that it had not, at the time Watson conveyed said mining claims to said corporation, complied with the constitution (sec. 10, art. 11) and laws of the state (sec. 2792, Rev. Codes) in regard to filing its articles of incorporation and designating an agent upon whom service of process might be made, is not well taken, for the following reasons: First, it is found that the contract for the sale of said mining claims was a legal, valid contract, procured without conspiracy or fraud on the part of the defendants, and that Keating had accepted and received the entire purchase

price therefor; and, second, that Keating had received the entire purchase price and acquiesced in the transaction after he had knowledge of all of the facts concerning said transaction, and is estopped from recovering by reason of his laches and neglect in not rescinding the contract and returning the purchase price within a reasonable time after he concluded that he had been defrauded. That being true, applying the rule laid down by this court in *Katz v. Herrick,* 12 Ida. 1, 86 Pac. 873, Keating having received the full purchase price for said mining claims, the right of the Keating Mining Co. to take and hold title to said mining claims is one that can neither legally nor equitably concern Keating, at least no further than as a stockholder thereof. This court in the Katz-Herrick case said: "The right to take and hold title to real property is one that can neither legally nor equitably concern the vendor thereof after he has parted with his title and received the purchase price therefor." If this court should hold under said contention of appellant that the Keating Mining Co. had no title to said property because of its failure to comply with the laws of this state, under the facts of the case as shown by the evidence the title would be in the defendant Watson, and that would not avail Keating in any manner. But the appellant, having received full compensation for said claims, cannot now legally or equitably be concerned therein, as he has parted with his title thereto and received the purchase price therefor.

## METHOD OF IDENTIFYING EXHIBITS.

During the cross-examination of the appellant, counsel exhibited to him certain letters for identification, and the witness testified that he did not know whether the letters presented contained his signature or not, and stated to the counsel that he might tell whether they contained his signature if he were allowed to read them. Counsel for appellant thereupon stated to the court that the witness had a right to examine the letters which he was asked to identify, and requested that the witness be permitted to read the letters. The court denied the request, and that action of the court is as-

signed as error. When counsel presents a paper to a witness for identification, and the witness states that he cannot identify it unless he is permitted to look at the paper and read it, it is error for the court not to permit the witness to examine it. The court ought not to permit a paper to be marked for identification where it has not been properly identified by the witness, and he is permitted to examine it before he identifies it if he desires to do so. It is unfair to the witness to require him to testify whether a certain paper contains his signature without permitting him to examine it. Such an examination would no doubt refresh his memory in regard to the matter. Merely showing a witness a signature and requiring him to state whether or not he signed the paper to which that signature is attached, without permitting him to examine the paper so as to identify it understandingly, in this age when forgers have become so expert, is not consistent with reason and fairness. However, in this case, after said letters were introduced in evidence, it was apparently admitted that he signed them, as he was not placed upon the stand to testify to the contrary. Therefore the action of the court in that matter was error without prejudice, and not cause for reversal.

Other errors are assigned, and after a careful examination of them we are satisfied that there is not sufficient error appearing in the record to justify a reversal of the judgment. The judgment is therefore affirmed, with costs in favor of the respondent.

Ailshie, J., concurs.