RIB FALLS LUMBER COMPANY, Respondent, vs. LESH & MATHEWS LUMBER COMPANY, Appellant.

*November 16, 1910—January 10, 1911.*

*Foreign corporation: Contract void on its behalf: Defenses: Sale of lumber: Delivery of inferior portions: Recoupment: Counter-claim.*

1. Under sec. 1770b, Stats. (1898), an unlicensed foreign corporation, when sued upon a contract void in its behalf but enforceable against it, may establish as a defense any facts which will in whole or in part defeat plaintiff's right to recover, but is precluded from obtaining affirmative relief upon any cause of action or counterclaim arising out of the contract.

2. In an action for a balance alleged to be due for lumber delivered under a contract for the sale of the plaintiff's entire stock of

certain kinds of lumber at a specified price for all lumber of each kind graded as "No. 2 common and better," and a lower price for "No. 3 common," the answer alleged that plaintiff had wrongfully abstracted the best and most valuable portions of the lumber graded as "No. 2 common and better," and had delivered only the inferior portions, thereby reducing the value of that which was delivered to an amount much less than the contract price. *Held*, that the facts so alleged constitute a defense which would defeat in whole or in part plaintiff's recovery, and therefore should not be treated as a counterclaim or cross-complaint within sec. 2656, Stats. (1898).

APPEAL from a judgment of the circuit court for Marathon county: A. H. REID, Circuit Judge. *Reversed.*

This is an action to recover the balance alleged to be due for lumber delivered on a contract. The alleged contract is one for the sale of a stock of lumber to be thereafter manufactured. The contract enumerates the kinds and the estimates of the quantities of the lumber embraced in the contract and continues as follows:

"It is understood that the above amounts are estimated and that the sale and purchase includes all the stock of the different kinds mentioned which the party of the first part will manufacture, during the sawing season of 1908, both at their Barney and Sellin mills. To be loaded on cars at Rib Falls, Wisconsin, by party of the first part.

"The party of the second part agrees to pay the following prices for above stock, F. O. B. cars, Rib Falls, Wisconsin:

| Rock Elm | No. 2 C & B | $28.00 | No. 3 C | $11.00 |
|---|---|---|---|---|
| Basswood | " " " " " | 23.00 | " " " | 14.00 |
| Soft Elm | " " " " " | 18.00 | " " " | 9.00 |
| Black Ash | " " " " " | 25.00 | " " " | 9.00 |
| White Ash | " " " " " | 30.00 | " " " | 9.00" |

After stating that the National Hardwood Association rules are to govern, and the sizes into which the lumber is to be cut, the contract continues as follows:

"Terms of payment of any of the above stock that is ordered shipped green from the saw, 60 days from shipment, or 2 per cent. cash discount, 15 days.

"On all lumber that is piled, terms are as follows: All lumber piled previous to March 1st, 1908, in finished piles, is to

be estimated at such date, and second party is to give its note for 60 per cent. of the value of said lumber, based on the above prices, payable four months from such date, without interest. All lumber piled in finished piles during the month of March, is to be estimated April 1st, 1908, second party is to give its note for 60 per cent. of the value of said lumber based on the above prices, payable four months from such date without interest. All lumber piled in finished piles during the month of April, is to be estimated on the 1st of May, and second party is to give its note for 60 per cent. of such value, payable four months from such date without interest. All lumber piled in finished piles during the month of May, is to be carefully estimated on the 1st of June, and second party is to give its note for 60 per cent. of such value, payable four months from such date, without interest. First party agrees to once renew half the above paper, at maturity, for four months, providing the lumber for which such paper has been given shall not have been shipped, such renewal to be at the expense of said second party.

"The remaining 40 per cent. to be settled as the lumber is shipped, terms of such portion, 60 days or 2 per cent. 15 days.

"Any lumber not shipped by or before December 31st, 1908, is to be carefully estimated by both parties at such date and to be then settled for in full, terms 60 days or 2 per cent. 15 days."

Provision is made for the payment of insurance, and the contract then proceeds:

"The party of the second part agrees to pay to the party of the first part 30c per M. for all No. 2 common and better lumber, which is handled the second time in the manipulation of grades.

"The making of the payments mentioned shall be a condition precedent to the further performance of the contract by the first party, and title to the lumber shall remain in first party until the same is loaded, as security for any part of the entire purchase price remaining unpaid."

The plaintiff seeks to recover the amount alleged to be due for lumber delivered on board cars and for lumber piled in the

mill yard, and for the cost of rehandling a part thereof pursuant to this contract.

The answer of the defendant admits the amounts set out by the plaintiff to be correct, but alleges by way of defense that all of the lumber manufactured by the plaintiff and embraced in the contract was not delivered, in that the higher grades of the lumber so manufactured by the plaintiff and included in the term "No. 2 common and better" have been detached from said stock by plaintiff for its own use; that the stock included in the contract has been so depleted by taking therefrom 210,000 feet of the best grades and quality, thereby greatly reducing the value of what was shipped and delivered; that the 210,000 feet of lumber referred to as having been taken from the stock and which were included in the contract were the upper grades and were worth at market value more than the flat or average price fixed in the contract; that by reason of the plaintiff's having so taken and disposed of the best part of this lumber, the lumber delivered is not the lumber embraced in and sold by the contract, but only the poorer and cheaper parts of the grades; that by reason of such depletion of the stock so sold to the defendant the plaintiff is unable to perform the contract; and that the defendant is damaged thereby in the sum of $3,740. The defendant also alleges these facts as a counterclaim, and asks that it may have judgment against the plaintiff for the damages thereby caused to the defendant.

The plaintiff in its reply denies the allegations of the answer as to the better quality of lumber having been detached from the stock so sold the defendant, and alleges that the defendant is a foreign corporation which has not complied with the provisions of sec. 1770b, Stats. (1898), so as to authorize it to do business in this state, and that the contract is wholly void as to the defendant but is enforceable against it.

On the trial it appeared that the defendant was a foreign

corporation doing business in this state and that it had not complied with the provisions of sec. 1770*b*, Stats. (1898). The court therefore refused to admit evidence to sustain the defendant's answer and counterclaim.

This is an appeal from the judgment in plaintiff's favor upon the verdict directed by the court.

For the appellant there was a brief by *Regner & Ringle,* attorneys, and *E. M. Smart,* of counsel, and oral argument by *Mr. Smart.*

For the respondent there was a brief by *Kreutzer, Bird, Rosenberry & Okoneski,* and oral argument by *C. B. Bird.*

SIEBECKER, J.     The court ruled to exclude all the evidence of the defendant to sustain its answer, upon the ground that it had no license to do business in this state, and hence, under the provisions of sec. 1770*b*, Stats. (1898), as amended, is precluded from asserting a right to any relief in this action. The court was of the opinion that the matters alleged by the defendant in answer to the plaintiff's complaint consisted of new matter which was in its nature and substance an independent cause of action or counterclaim in its favor and hence not enforceable, since the right so asserted arises out of this contract, which is wholly void as to the defendant by reason of its default in not filing a copy of its charter or articles of incorporation with the secretary of state as required by sec. 1770*b*, Stats. (1898). No claim is made that it can, under these circumstances, demand relief by way of counterclaim to plaintiff's alleged cause of action.     This is in accord with the decision in *Ashland L. Co. v. Detroit S. Co.* 114 Wis. 66, 89 N. W. 904.

It is however contended that the answer alleges a defense which, if established, will in whole or in part defeat plaintiff's right to recover upon the cause of action alleged in the complaint.     If the answer alleges such a defense to plaintiff's claim, then the defendant is entitled to be heard in the case to

protect itself against any demand of the plaintiff not warranted by law. The right to defend when sued is well established and recognized. As stated in *Windsor v. McVeigh,* 93 U. S. 274, 277:

"Wherever one is assailed in his person or his property, there he may defend, for the liability and the right are inseparable. This is a principle of natural justice, recognized as such by the common intelligence and conscience of all nations."

The principle is so well recognized that citation of authority is unnecessary.

The question then is, Does the answer present a defense to plaintiff's cause of action? It is necessary to ascertain the exact state of the pleadings to determine the controversy thus presented. The complaint charges that the plaintiff is entitled to recover a balance due on the purchase price for lumber it has delivered to the defendant pursuant to an alleged contract and that the defendant refuses to pay the same. The material portions of this contract are stated in the foregoing statement of the case. The answer denies that the plaintiff has fully performed all of the agreements of the contract and alleges that the plaintiff failed to deliver all the lumber embraced in the contract. It is admitted that the plaintiff delivered the quantities of lumber specified in the complaint, but it is alleged "that the lumber so delivered was of a poorer quality and grade than that agreed to be delivered by the plaintiff in and by said contract," because the portion delivered by it as part of the 1908 output of its mills as covered by the contract in question had been depleted and damaged by the plaintiff by wrongfully removing therefrom 210,000 feet of the best parts of these grades and qualities, and hence, in violation of the contract of sale, the plaintiff delivered to the defendant only the poorer and inferior part of the grades of the stock manufactured in its mills, and thereby reduced the value of the part delivered to the defendant to an amount

much less than the contract price and less than such grade was worth before such wrongful separation and depletion of the stock.

The contract between the parties includes all the stock of the kinds specified which were to be manufactured by the plaintiff during the sawing season of 1908 and was to be paid for at the stipulated prices for the different kinds of wood, all to be graded as No. 2 common or better and No. 3 common, pursuant to the National Hardwood Association rules. It is alleged that under such grading referred to in the contract the No. 2 common and better lumber consists of grades classed as firsts and seconds and as Nos. 1 and 2 common, that the upper of such grades are of much higher market value than the lower and much higher than the average or flat price fixed in the contract for the entire stock, and that the 210,000 feet so abstracted were the best and most valuable portion of the manufactured stock, of which only the inferior part has been delivered. If these allegations are established it would show that the plaintiff has not fulfilled the stipulations of the contract under which it claims to have delivered the lumber shipped, in that it so manipulated the lumber as to deprive the defendant of the best portions of this stock, which it had agreed to deliver as part of the stock shipped to the defendant. It also appears from these allegations that the price demanded by the plaintiff for the inferior material so delivered is the contract price for the stock including the superior and more valuable portion of this whole stock, so alleged to have been wrongfully converted and sold to other persons, and it is alleged that the plaintiff has thereby rendered itself unable to perform the very terms of the agreement relied on to recover in this action.

In the light of the plaintiff's claim the new defensive matter alleged by the defendant goes in denial of the plaintiff's cause of action and operates to defeat, either in whole or in part, its right to recover. The facts so alleged are a denial

of plaintiff's right to recover the amount alleged to be due under the stipulations of the contract which the plaintiff seeks to enforce. It is asserted by the respondent that the defendant admits having received, pursuant to the contract, the amount of lumber alleged to have been delivered, and therefore that the plaintiff is entitled to recover the full contract price, because the contract is apportionable and obligates the defendant to pay for the portion delivered as a condition precedent to any obligation on its part to make further delivery. The allegations of the answer cannot be so interpreted. The allegations of the answer are clearly a denial of the claim that deliveries were made in compliance with the contract, and the defendant avers that the plaintiff fraudulently defaulted in this respect by so manipulating the output of its mills as to depreciate the grades of the stock it claims to have delivered, thus breaching the very terms of the contract it seeks to enforce against the defendant. Under these circumstances it is the defendant's right to have the amount of the plaintiff's recovery limited to the actual value of the lumber delivered. The wrongful conduct of the plaintiff operates, under the equities of the law, to defeat its claim under the contract by diminishing the amount due for the material delivered under it, and its recovery of the contract price is to be decreased by the loss occasioned by its wrongful conduct in failing to execute the contract. This defense operates to defeat plaintiff's recovery and therefore is not to be treated as a counterclaim or cross-complaint within sec. 2656, Stats. (1898), defining counterclaim, as applied in *Heckman v. Swartz,* 55 Wis. 173, 12 N. W. 439, and similar cases. The declaration that the statutory counterclaim "embraces both recoupment and set-off" must be applied in the sense in which it is employed in the statute and these cases, namely, a cross-demand of the defendant against the award to which the plaintiff is entitled upon the cause of action alleged by him; and the term "counterclaim" must be used as referring to a cause of action of the

defendant constituting a defense for affirmative relief and not as a defense which goes only to defeat the plaintiff's cause of action. Any apparent conflict in views on the subject is due to the fact that "recoupment" has been variously used as a term to define a defense which goes only to diminish the plaintiff's claim for damages and to designate a defense by way of a counterclaim for affirmative relief in reduction of the damages to which the plaintiff is actually entitled upon his cause of action. We consider that the facts alleged in the answer constitute a defense which will defeat, in whole or in part, the amount of plaintiff's alleged cause of action, and hence is strictly new matter constituting a defense. *Washburn v. Dosch,* 68 Wis. 436, 32 N. W. 551; *Manning v. School Dist.* 124 Wis. 84, 102 N. W. 356.

Appellant concedes that it has no right, under the circumstances of the case, to enforce any affirmative relief upon the independent cause of action arising out of this transaction, and hence this question need not be considered. *Ashland L. Co. v. Detroit S. Co.* 114 Wis. 66, 89 N. W. 904.

Upon the facts alleged it must be held that the court erred in excluding the evidence offered to sustain the defense alleged in defendant's answer. The allegations charging that the plaintiff disabled itself from delivering the lumber as manufactured by depleting the stock of the best and most valuable portion and by otherwise disposing of such superior parts of such classes and grades, thus diminishing the value of that delivered below the price fixed in the contract, entitled the defendant to show by what amount the value had been diminished, in order to ascertain what amount, if any, the plaintiff was entitled to recover on its cause of action.

*By the Court.*—The judgment appealed from is reversed and the cause remanded for a new trial.

KERWIN, J., dissents.