# KLEVE J. FLAKNE AND OTHERS v. METROPOLITAN LIFE INSURANCE COMPANY AND OTHERS. GIRARD HOLDING COMPANY, INTERVENER.[1]

December 14, 1936.

Nos. 31,011, 31,031.

[1]Reported in 270 N. W. 566.

466

*K. J. Flakne, Stiles & Stiles,* and *F. J. Donahue,* for appellants and relators.

*Herbert H. Drews* and *Arthur H. Anderson,* for respondent Metropolitan Life Insurance Company.

I. M. OLSEN, JUSTICE.

The appeal is from the judgment entered in the district court of Hennepin county on April 13, 1936, denying the relief asked for by the plaintiffs and granting judgment against the plaintiffs and the intervener, Girard Holding Company, for foreclosure of a mortgage given by the intervener. The judgment directs a sale of the premises and application of the proceeds upon the indebtedness secured by the mortgage.

The defendants Grace Binder, H. G. Kintzinger, and Julia E. Kintzinger. disclaimed any interest in the mortgaged premises. The defendants Margaret A. Thorpe and Ideal Laundry Company, a corporation, did not appear or answer. For convenience, we refer hereinafter to the plaintiffs and Girard Holding Company as the appellants and to the Metropolitan Life Insurance Company as the defendant, unless otherwise indicated.

The property involved in the foreclosure is a large apartment building with 26 apartments therein in the city of Minneapolis.

On January 10, 1930, the Girard Holding Company, being then the owner of the property, executed and delivered to Thorpe Bros., a corporation, its promissory note for $43,000 and a mortgage upon the property to secure said note. The note and mortgage were shortly thereafter assigned to the defendant. The consideration for the note and mortgage was a loan of $43,000 to the Girard Hold-

ing Company. The plaintiffs at some later time obtained title to the property, subject to the mortgage, by mesne conveyances from the Girard Holding Company.

Default occurred in the payment of the amounts due on the note and mortgage, and on April 9, 1935, the defendant commenced proceedings to foreclose the mortgage by advertisement. Notices were duly served and published, and the sale was set for May 27, 1935. On May 25 the plaintiffs obtained an *ex parte* order from the district court of Hennepin county, Minnesota, requiring the defendant to show cause why the sale advertised to be held should not be stayed, basing that order upon a complaint then presented by the plaintiffs by which they sought to have the foreclosure proceedings stayed and converted into a foreclosure by action under the moratorium law, L. 1935, c. 47 (3 Mason Minn. St. 1936 Supp. §§ 9633-1 to 9633-21) approved March 15, 1935. The order to show cause stayed proceedings in the foreclosure until a hearing should be had and further order made by the court upon plaintiffs' application and complaint. The relief prayed for in plaintiffs' application was that the foreclosure proceedings be stayed until March 1, 1937, and that the court direct that said foreclosure proceed, if at all, by action. It appears next that a stipulation was entered into between plaintiffs and defendant under date of June 6, 1935, that the foreclosure by advertisement be postponed and that the foreclosure of the mortgage proceed by action. Pursuant to that stipulation the court, under date of June 19, 1935, made its order that the proceeding to foreclose the mortgage by advertisement be postponed and that the foreclosure should proceed by action.

The defendant, in compliance with the order of the court of June 19, 1935, amended its answer to plaintiffs' original complaint by adding thereto a cross-bill and claim for the foreclosure of its mortgage in the pending action. There were further amendments to plaintiffs' complaint and to answers or replies to defendant's amended answer and cross-bill. The intervener later appeared and, in effect, joined the plaintiffs in opposition to defendant's efforts to foreclose.

468

After numerous amendments to the various pleadings and further stipulations, the case came on, for trial before the district court on February 24, 1936. The defendant moved for judgment in its favor on the pleadings. On April 13, 1936, the court granted the motion and made its order for judgment for foreclosure sale of the mortgaged premises. Judgment was thereupon entered as hereinbefore stated.

Only one question of any importance is raised by the appellants on this appeal. That question is as follows: The appellants, in their pleadings as finally settled, allege that at the time defendant took the mortgage in question it was not licensed or authorized to do business in this state as a foreign corporation organized and operated under what is now 2 Mason Minn. St. 1927, c. 58, §§ 7493-7495; that because thereof it was not entitled to sue or maintain an action in the courts of this state to foreclose its mortgage.

The pleadings show that the defendant has been doing business in this state as a foreign life insurance company continuously since 1899. During all of said time it was duly licensed and authorized by the insurance commissioner or insurance department of this state, by annual licenses, to do business here as a foreign life insurance company, under what is now 1 Mason Minn. St. 1927, c. 19, §§ 3711 to 3720, inclusive. During the period from August 6, 1929, to March 31, 1932, defendant was not licensed as a foreign corporation "for pecuniary profit" under §§ 7493-7495, c. 58, of said statutes. At all other times it has been and now is so licensed.

A number of reasons suggest themselves as sufficient to sustain the order and judgment of the trial court.

■ We find no allegation in any of the pleadings that this defendant was a foreign corporation organized or doing business "for pecuniary profit." Neither do we find any allegation that it had any capital stock, except some recitals that it failed to file certain statements as to the proportionate amount of its capital stock invested in this state. Unless it had capital stock, there would be no such statements to file. There are general allegations that it violated the provisions of §§ 7493-7495 of the statutes, and some allegations that, during the period 1929 to 1932, it transacted busi-

ness other than life insurance. The statute here referred to is highly penal in its nature and should receive a strict construction as applied to the facts in this case.

■ The policy of this state has been to protect and encourage, rather than discourage, foreign corporations and individuals in making loans and investing money within this state. So it is provided in § 7495 that the penalties therein provided shall not apply to any corporation engaged only in the business of loaning money or investing in securities in this state, including all business incidentally growing out of the same and the handling of such real estate and other property as may be taken by foreclosure or otherwise in liquidation of such loans or securities.

■ As this defendant was at all times licensed and authorized to do a life insurance business in this state, no court would hold that it violated the law in conducting that business. If it were held that it did engage in some separate and distinct business not incidental to or arising out of its life insurance business, that might give the state the right to enforce the penalties provided by § 7495 of the statutes, but would not affect the validity or enforcement of contracts entered into by it in the conduct of its life insurance business. We cannot agree with appellants' contention that a foreign life insurance corporation, licensed to do a life insurance business, could not, prior to the enactment of L. 1935, c. 200, 3 Mason Minn. St. 1936 Supp. §§ 7495-1 to 7495-30, lawfully engage in that business without complying with §§ 7493-7495 of the then statutes. The investing of its funds in mortgage loans is an activity incidental to and growing out of the life insurance business of such a corporation. It necessarily must invest funds coming into its hands from its policyholders in order to produce income with which to pay the expenses of carrying on business and to provide for payment of losses and returns to its policyholders. As far as we know, all life insurance companies, as a part of their business, do make such investments and do collect and enforce such investments. In so doing they do foreclose mortgages, acquire property, and necessarily handle such property until it can properly be disposed of. The appellants' pleadings do not show that de-

fendant has gone beyond that in acquiring property on foreclosure and handling same. Dividends to policyholders are not profits for the corporation, but are adjustments from time to time of the cost of insurance.

■ It is settled in this state that at least prior to the act of 1935 a mortgage or contract entered into, even by a foreign corporation having no license of any kind to do business in this state, is not a void contract; and, as between the parties, the only result, so far as the contract is concerned, is that the corporation cannot bring an action in court to enforce the contract. Kraft v. Hoppe, 152 Minn. 143, 188 N. W. 162. In that connection it may be noted that the legislature in §§ 7493-7495 of the statutes carefully avoided any provision invalidating contracts made by an unlicensed corporation. This no doubt was done to avoid constitutional restrictions against impairing contracts and the taking of property without due process.

■ A foreclosure by advertisement is not a proceeding in court or at law, and a foreign corporation may so foreclose a mortgage held by it even if it has no license to do business in the state. In re Grundysen, 53 Minn. 346, 55 N. W. 557; Morris v. Penn Mut. L. Ins. Co. 196 Minn. 403, 265 N. W. 278.

Quite clearly, we think, L. 1935, c. 47, under which plaintiffs brought this action, was not intended by the legislature to deprive the mortgage holder of any rights or benefits that it would have had by foreclosure by advertisement, except that the matter of postponement and time of redemption be determined by the court. It clearly appears that the foreclosure by action therein provided for is a continuation of the proceeding theretofore commenced to foreclose by advertisement, and the sale therein provided for is in completion of the sale advertised to be held.

■ The defendant here has not sued or maintained any action, at law or otherwise, in court. The suit was commenced and has been maintained by the plaintiffs and the intervener. Defendant was compelled to come into court and defend its rights under the mortgage. In that situation defendant is not violating any statute by setting up, by answer and cross-complaint, its rights to fore-

close this mortgage. In 14a C. J. p. 1312, § 4016, the general rule is stated that a statute such as ours "does not prevent a foreign corporation which has not complied with the statute from defending a suit brought against it, interposing and recovering upon a counterclaim arising out of the transaction in suit, or prosecuting an appeal or writ of error from a judgment recovered against it." Cases are there cited from the federal circuit court of appeals and from seven state courts, among them J. R. Alsing Co. v. New England Q. & S. Co. 66 App. Div. 473, 73 N. Y. S. 347 (affirmed 174 N. Y. 536, 66 N. E. 1110); American Ink Co. v. Riegel Sack Co. 79 Misc. 421, 140 N. Y. S. 107; Carrier Engineering Corp. v. International Mfg. Co. 104 Misc. 191, 171 N. Y. S. 641.

It may be noted also that defendant's cross-complaint in the present action is not strictly a counterclaim. It is matter in defense, which, under the order of the court asked for by the plaintiffs, it was required to plead. It is a defense to the amended complaint of the plaintiffs and the complaint of the intervener.

The conclusions reached are that the taking of this mortgage by the defendant was a matter incidental to and a part of its business as a life insurance company; that under its license from the insurance commissioner it was duly authorized to transact such business in this state at the time it took such mortgage; that, even if it had not been so authorized, the appellants, by bringing this action against defendant, cannot prevent it from defending and pleading its mortgage and the defaults thereunder to entitle it to a foreclosure sale. By bringing it into court, the appellants are estopped from claiming that defendant has no right to be in court.

The judgment appealed from is affirmed.

There is a proceeding by *certiorari* to review this same judgment. This being an appealable judgment, it is not subject to review on *certiorari*. The writ of *certiorari* is discharged and that proceeding dismissed.

Mr. Justice Loring took no part in the consideration or decision of this case.