(December 2, 1916.)

GILBERT DONALDSON, Appellant, v. THE THOUSAND SPRINGS POWER COMPANY, a Corporation, SALT LAKE SECURITY & TRUST COMPANY, a Corporation, FRANK N. BANCROFT, THOUSAND SPRINGS LAND & TRANSPORTATION COMPANY, LIMITED, a Corporation, A. M. GRANT, P. M. DAVIS, SAMUEL PARROTT and R. D. ROBERTS, as Directors of Said THOUSAND SPRINGS LAND & TRANSPORTATION COMPANY, LIMITED, Respondents.

[162 Pac. 334.]

FOREIGN CORPORATIONS — CONSTRUCTION OF STATUTES — VALIDITY OF DEEDS AND CONTRACTS—FAILURE TO COMPLY WITH SEC. 10, ART. 11, OF THE CONSTITUTION AND SEC. 2792, REV. CODES, AS AMENDED BY SESS. LAWS 1915, P. 270—OPTION TO PURCHASE—EQUITABLE INTEREST—LEGAL TITLE—ESTOPPEL—TRUSTS—JUDGMENT LIENS.

1.  Foreign corporations failing to comply with sec. 10 of art. 11 of the constitution of Idaho, and the provisions of sec. 2792, Rev. Codes, as amended by chap 124, p. 270, 1915 Sess. Laws, cannot take or hold title in their own name to realty in this state prior to a compliance with the constitution and laws of this state affecting foreign corporations, and under the provisions of said statute any pretended deed or conveyance of realty to such corporation prior to a compliance with the constitution and laws of this state is absolutely null and void.   The statute, however, does not provide for the additional and harsh penalty of declaring void all conveyances made to a trustee for the use and benefit of such corporation, for property purchased in its behalf by such trustee preparatory to actually engaging in business in this state.

2.    Where land has been conveyed by a judgment debtor to a trustee of a foreign corporation, and the full purchase price has been paid therefor by the trustee of the foreign corporation, prior to the entry of the judgment in favor of such judgment creditor, in the absence of fraud the judgment lien attaches to the precise interest which the judgment debtor actually had in the land at the date of the entry of the judgment, and said judgment lien cannot be made effectual to bind or to convey any greater or other estate than the judgment debtor himself, in the exercise of his rights subsequent to the completion of said sale, could have voluntarily transferred or alienated.

3.    A contract or agreement for the purchase of real property which contemplates that the purchaser shall hold such property in trust for a foreign corporation which has not complied with the constitution and laws of this state, is not enforceable in the courts of this state, as regards the execution of the trust, under the provisions of sec. 2792, Rev. Codes, as amended by 1915 Sess. Laws, chap. 124, p. 270.

4.    Acceptance of an option to purchase land within the time specified and in compliance with the conditions of the option, changes such option into a contract of sale, binding upon both parties, and entitles the grantee to call for performance, as of the date of the giving of the option, so as to cut off intervening rights acquired with knowledge of the existence of the option.

[As to what constitutes doing business in the state by foreign corporation, see notes in **Ann. Cas. 1912A, 553; Ann. Cas. 1913E, 1154.**]

APPEAL from the District Court of the Fourth Judicial District for Gooding County.  Hon. James R. Bothwell, Judge.

Action to subject the property of a foreign corporation to the payment of a judgment, and to set aside conveyances to such corporation for noncompliance with sec. 10 of art. 11 of the constitution and the provisions of sec. 2792, Rev. Codes, as amended by chap. 124, p. 270, 1915 Sess. Laws.  Demurrer to complaint sustained.  *Affirmed.*

J. B. Eldridge, for Appellant.

Sec. 2792, Rev. Codes, is mandatory, and any conveyance made to a corporation that has failed to comply with the said law is, as there declared, null and void.  (*Dickens-West*

*Min. Co. v. Crescent Mining & Mill. Co.,* 26 Ida. 153, 141 Pac. 566.)

It was the intention of the legislature to prohibit foreign corporations from doing business in this state prior to the time that they comply with the law of this state. (*Katz v. Herrick,* 12 Ida. 1, 86 Pac. 873.)

"A deed is a contract between the grantor and grantee, although the grantee does not sign it." (*Negaunee Iron Co. v. Iron Cliffs Co.,* 134 Mich. 264, 96 N. W. 468; *Wierengo v. American Fire Ins. Co.,* 98 Mich. 621, 57 N. W. 833; *Watkins v. Nugen,* 118 Ga. 372, 45 S. E. 262; *Tyler v. Cate,* 29 Or. 515, 45 Pac. 800; *Newmyer v. Roush,* 21 Ida. 106, Ann. Cas. 1913D, 433, 120 Pac. 464.)

One cannot do indirectly what he cannot do directly; one cannot be a *cestui que trust* if he cannot take title in the first instance. (1 Perry on Trusts, 6th ed., 47, 50.)

Where the corporation had no right to take title to real property in the first instance, and where it had been deprived of that right, the trustees could not hold the title. (*Late Corporation of the Church of Jesus Christ of Latter-day Saints v. United States,* 136 U. S. 1, 10 Sup. Ct. 792, 34 L. ed. 481.)

It was not the intention of the legislature to permit foreign corporations to come into our state through the instrumentality of an agent and transact business and take title to real property, and thus defeat the object of the statute itself. (*Wood v. Independent School Dist.,* 21 Ida. 734, 124 Pac. 780; *Colburn v. Wilson,* 24 Ida. 94, 132 Pac. 579; *State v. Omaechevviaria,* 27 Ida. 797, 152 Pac. 280.)

Longley & Walters and P. B. Carter, for Respondents.

If title were to fail from Ponsford to Bancroft and from Bancroft to the Thousand Springs Power Company, still Ponsford would be holding an option to purchase the property involved in this action with each and all the provisions of which there has been complete compliance. Appellant must avoid all transfers from his debtor before he may have

recourse to the property involved for the satisfaction of his claim. An optionee secures an equitable interest when an option to purchase real estate has been granted. (*Kerr v. Day,* 14 Pa. St. 112, 53 Am. Dec. 526; *Donnally v. Parker,* 5 W. Va. 301; *Barrett v. McAllister,* 33 W. Va. 738, 11 S. E. 220; *Telford v. Frost,* 76 Wis. 172, 44 N. W. 835.)

Sec. 2792, Rev. Codes, is penal in its nature, and must be strictly construed. (36 Cyc. 1183; *Alleghany Co. v. Allen,* 69 N. J. L. 270, 55 Atl. 724.)

It applies only to corporations actually engaged in business in the state at the time of taking or holding title. (*Foore v. Simon Piano Co.,* 18 Ida. 167, 108 Pac. 1038.)

Were the corporation incapable of taking title because it had failed to comply with the laws of Idaho, nevertheless the title would remain in its trustee, and this would not avail the plaintiff in any manner. (*Keating v. Keating Min. Co.,* 18 Ida. 660, 112 Pac. 206.)

Though the corporation were incapable of holding the equitable interest, still there would be no resulting trust to the grantor, the grantor having received the consideration for the conveyance to the trustee. (Perry on Trusts, 6th ed., secs. 151, 158, 159.)

The trustee takes title. (Lewin on Trusts, 8th ed., sec. 19, p. 66.)

BUDGE, J.—The complaint in the above-entitled action contains, among other things, the following alleged facts, from which the conclusions of law incorporated in the statement of facts herein stated necessarily follow:

On April 25, 1910, the Thousand Springs Land & Transportation Company, Limited, a domestic corporation, being the owner and in rightful possession of 92.35 acres of land in Gooding county, Idaho, certain personal property, consisting of steel pipes, penstocks, timber, tools, etc., and certain filings and permits issued by the state engineer to the right to the use of water flowing out of certain springs, part of which are located on said land, entered into an agreement with one

Arthur Ponsford, whereby Ponsford was given an option to purchase the same.

On April 30, 1910, Ponsford made a declaration of trust, in which he declared that he held said option in his name as trustee for various parties named therein as beneficiaries, whose respective interests and liabilities, in case they accepted the trust, were set out; that he became liable to forfeit a certain sum in case the option should not be exercised; that the beneficiaries named should become and constitute a committee known as the Thousand Springs Committee, for the purpose of organizing a corporation to acquire title to the property described in the option, said corporation to be known as the Thousand Springs Power Company; and that upon the organization of said corporation Ponsford was to transfer and convey to said corporation all of his right, title and interest under the option. This declaration of trust was signed by Ponsford and was also signed and accepted by the beneficiaries named therein.

On July 5, 1910, Ponsford and the beneficiaries named in the declaration of trust made an initial payment of $5,000 to the Thousand Springs Land & Transportation Company, in accordance with the option as modified, and on August 17, 1910, they entered into actual possession of the property described in the option.

On September 15, 1910, the Thousand Springs Power Company was incorporated under the laws of Arizona.

On October 20, 1910, Ponsford transferred to the Thousand Springs Power Company all his right, title and interest under the option, and the so-called Thousand Springs Committee, by Frank N. Bancroft, transferred to the Thousand Springs Power Company all of its right, title and interest in and to the declaration of trust.

On May 26, 1911, the Thousand Springs Power Company duly executed its power of attorney to Frank N. Bancroft, chairman of its organization committee, authorizing him to take the legal title, in his name for its use and benefit, of the property described in the option, and to execute notes and a mortgage to the Thousand Springs Land and Transportation

Company in payment therefor, in accordance with the terms of the option as modified.

On June 1, 1911, the Thousand Springs Land and Transportation Company, Limited, pursuant to the terms of the option as modified, conveyed the legal title of the property to Bancroft, by deed, and Bancroft executed a declaration of trust, setting out that in pursuance of the power of attorney given him by the Thousand Springs Power Company he had received by conveyance by warranty deed the property of the Thousand Springs Land and Transportation Company, Limited; that he held the same in his own name and right in trust for the use and benefit of the Thousand Springs Power Company; and that under the terms of said option he had made payment of $7,500 and had executed and delivered certain notes and a mortgage to the Thousand Springs Land and Transportation Company.

On November 13, 1911, the Thousand Springs Power Company complied with the constitution and laws of this state relating to foreign corporations doing business in this state.

On December 16, 1911, Bancroft conveyed said property by deed to the Thousand Springs Power Company, so that on that date the Thousand Springs Power Company became the owner of the legal title to the property, as well as of all the right, title and interest acquired by Ponsford under the option and by the Thousand Springs Committee under Ponsford's declaration of trust.

On June 21, 1911, appellant herein began his suit against the Thousand Springs Land and Transportation Company, Limited, and on June 30, 1913, after the Thousand Springs Power Company had fully complied with the constitution and laws of this state, and the legal title to the property described in the option had been conveyed to Bancroft and by Bancroft to the Thousand Springs Power Company, and after Ponsford and the Thousand Springs Committee had transferred all of their right, title and interest in said property to the Thousand Springs Power Company, and the option given to Ponsford fully complied with, as modified, the ap-

pellant herein recovered judgment against the Thousand Springs Land and Transportation Company for $19,985.30.

On or about January 27, 1912, the Thousand Springs Power Company by trust deed conveyed the property to the Salt Lake Security and Trust Company, as security for a certain bond issue; said latter company being a foreign corporation and never having complied with the constitution and laws of this state affecting foreign corporations.

On March 1, 1915, appellant brought his suit against the Thousand Springs Power Company, seeking to subject to the payment of said judgment the property upon which Ponsford had obtained his option of April 25, 1910, and which had been conveyed on June 1, 1911, by the Thousand Springs Land and Transportation Company, Limited, to Bancroft, and on December 16, 1911, by Bancroft to the Thousand Springs Power Company, upon the theory that said conveyances were void for the reason that the Thousand Springs Power Company, being a foreign corporation, had failed to file its articles of incorporation in this state, and to designate its agent, prior to the time that it, through its agents and trustees, took title for its use and benefit, to the property of the Thousand Springs Land and Transportation Company, Limited.

From the judgment of the district court of the fourth judicial district, sustaining the general demurrer to the complaint, plaintiff appeals, and for a reversal of the judgment makes the following assignments of error:

1. The court erred in sustaining defendant's demurrer that said complaint did not state facts sufficient to constitute a cause of action.

2. The court erred in rendering its judgment in favor of defendants and against plaintiff in dismissing said action.

3. The court erred in entering judgment in favor of defendants, Thousand Springs Power Company, Salt Lake Security and Trust Company, and Frank N. Bancroft.

Appellant urges that the Thousand Springs Power Company and the Salt Lake Security and Trust Company, not having complied with sec. 10 of art. 11 of the constitution

of this state, and sec. 2792, Rev. Codes, as amended by chap. 124, p. 270, Sess. Laws 1915, the deeds and conveyances to said corporations are therefore absolutely null and void, and that the conveyance of the property to Bancroft by whom the same was held in trust for the Thousand Springs Power Company was void, for the reason that said company could not do indirectly what it was prohibited from doing directly, namely, the taking of title to property in this state in the name of its trustee prior to a compliance with the constitution and laws of this state affecting foreign corporations.

On the other hand, respondents urge that Ponsford's option was valid, and even should it be admitted that the deeds and conveyances to said company were void, the option given to Ponsford would still subsist as a bar to appellant's right to recover against said property; that sec. 2792, Rev. Codes, *supra,* as amended, while providing that no foreign corporation can take or hold title to any realty in this state without having first complied with the constitution and laws of this state affecting foreign corporations, does not provide that conveyances made to a trustee for the use and benefit of such foreign corporations are void; that the act clearly distinguishes between contracts made in the name of or for the use or benefit of foreign corporations, and deeds and conveyances made to corporations; that the purpose of the act was not to bar foreign corporations from preparing to engage in business in this state, but to protect citizens of this state, and that the purpose of the statute was satisfied by preventing foreign corporations from holding legal title to land in this state while engaged in business in the state; that sec. 2792, Rev. Codes, *supra,* as amended, is penal, and must be strictly construed; that said section applies only to corporations actually engaged in business in the state of Idaho at the time of taking or holding title; that the case of *Keating v. Keating Min. Co.,* 18 Ida. 660, 112 Pac. 206, establishes the right of a trustee to hold title for a foreign corporation which has not complied with the Idaho law; that the decision in that case became a rule of property upon which respondents were entitled to rely.

Section 10 of article 11 of the constitution of the state of Idaho provides that:

"No foreign corporation shall do any business in this state without having one or more known places of business, and, an authorized agent or agents in the same, upon whom process may be served, and no company or corporation formed under the laws of any other country, state or territory, shall have or be allowed to exercise or enjoy within this state any greater rights or privileges than those possessed or enjoyed by corporations of the same or similar character created under the laws of this state."

Section 2792, Rev. Codes, as amended by chap. 124, p. 270, Sess. Laws 1915, among other things, provides that:

"No contract or agreement made in the name of, or for the use or benefit of, such corporation prior to the making of such filings as first herein provided, can be sued upon or enforced in any court of this state by such corporation. Such corporation cannot take or hold title to any realty within this state prior to making such filings, and any pretended deed or conveyance of real estate to such corporation prior to such filings shall be absolutely null and void."

No question is made of the validity of the above constitutional and statutory provisions, and it may be assumed, for the purposes of this case, that the Thousand Springs Power Company and the Salt Lake Security and Trust Company had no right to take or hold title in their corporate names to any realty within the state of Idaho prior to a compliance by them with sec. 10 of art. 11 of the constitution of the state of Idaho and sec. 2792, Rev. Codes, *supra*, as amended, and that any pretended conveyance of such title to said corporations would be void. It is manifest that the legislature intended that no title should pass under a conveyance to a foreign corporation purchasing real estate and engaging in business in this state before it acquired the right to do so by a compliance with the constitution and statutes of this state. (*Dickens-West Min. Co. v. Crescent Mining & Milling Co.,* 26 Ida. 153, 141 Pac. 566.)

It is well settled that a corporation can, by its agents, go into another state than that by which it was created, and make any contract, or take any conveyance, that is within the powers conferred upon it by its charter, provided the state in which the contract or conveyance is made has not prohibited such a transaction and the transaction is not contrary to the policy of its laws. (*Kennebec Co. v. Augusta Ins. & Banking Co.,* 6 Gray (72 Mass.), 204; *Hutchins v. New England Coal Min. Co.,* 4 Allen (86 Mass.), 580; *Wright v. Lee,* 2 S. D. 596, 51 N. W. 706; *Reichwald v. Commercial Hotel Co.,* 106 Ill. 439; *Santa Clara Female Academy v. Sullivan,* 116 Ill. 375, 56 Am. Rep. 776, 6 N. E. 183; *Bard v. Poole,* 12 N. Y. 495; *Merrick v. Van Santvoord,* 34 N. Y. 208; *Lancaster v. Amsterdam Imp. Co.,* 140 N. Y. 576, 35 N. E. 964, 24 L. R. A. 322, and note; note in 94 Am. Dec. 383.)

The right of foreign corporations to take or hold title to realty in this state depends upon their compliance with sec. 10 of art. 11 of the constitution and sec. 2792, Rev. Codes, *supra,* as amended, and upon compliance therewith foreign corporations are not prohibited from purchasing and holding real estate to the same extent as domestic corporations.

Sec. 2792, Rev. Codes, *supra,* as amended, contains the following provisions regarding contracts of and conveyances to foreign corporations which have not complied with the terms of that section:

First. Contracts made in the name of such corporations cannot be enforced by such corporations in any court of this state.

Second. Contracts made for the use or benefit of such corporations cannot be enforced by such corporations in any court of this state. (*Katz v. Herrick,* 12 Ida. 1, 86 Pac. 873; *Valley Lumber & Mfg. Co. v. Driessel,* 13 Ida. 662, 13 Ann. Cas. 63, 93 Pac. 765, 15 L. R. A., N. S., 299; *Dickens-West Min. Co. v. Crescent Mining & Milling Co.,* 26 Ida. 153, 141 Pac. 566; *Pennsylvania-Coeur d'Alene Min. Co. v. Gallagher,* 19 Ida. 101, 112 Pac. 1044.)

Third. Foreign corporations cannot take or hold title to any realty within this state prior to making such filings,

and any pretended deed or conveyance of real estate to such corporations prior to such filings shall be absolutely null and void.

The penalty that the legislature intended to impose upon a foreign corporation for its failure to comply with the constitution and statutes of this state regulating foreign corporations was to withhold the right to enforce contracts made in its name or for its use or benefit, and to acquire and hold in its name legal title to realty within this state, but it is clear from a careful reading of sec. 10 of art. 11 of the constitution and sec. 2792, *supra,* as amended, that a conveyance made to a trustee for the use and benefit of a foreign corporation is not prohibited, and that such a conveyance is not in violation of the constitution or statutes of this state.

It is a rule of statutory construction that general language in a statute will be limited to such persons and subjects as it is reasonable to presume the legislature intended it to apply to. The legislature provided, in sec. 2792, *supra,* as amended, that foreign corporations cannot take or hold title to any realty within this state prior to making such filings, and any pretended deed or conveyance of real estate to any such corporation, prior to such filings, shall be absolutely null and void, and we are not permitted to add thereto, and as a part thereof, that conveyances made to a trustee for the use and benefit of such foreign corporations, in the absence of fraud, shall be absolutely null and void. (*Keating v. Keating, Min. Co.,* 18 Ida. 660, 112 Pac. 206.)

It is quite evident that such contracts as those which were entered into by the Thousand Springs Power Company with Bancroft, Ponsford and the Thousand Springs Committee, cannot be enforced by such noncomplying foreign corporation in any court in this state. Such was the penalty prescribed by the legislature, in unambiguous terms, to be imposed upon a foreign corporation which should fail to comply with the constitution and laws of this state. It is not, however, for the judiciary, at the instance or for the benefit of private parties, to inflict the additional and harsh penalty of declaring void all conveyances made to a trustee for the

use and benefit of a foreign corporation failing for the time being to comply with the constitution and laws of this state prior to actually engaging in business.

If the legislature had intended that conveyances made to a trustee for the use and benefit of a foreign corporation should be null and void, or that no trustee should take or hold title to any realty for the use or benefit of a foreign corporation not complying with the constitution and laws of this state, that intention should have been clearly expressed in the act. (*Fritts v. Palmer*, 132 U. S. 282, 10 Sup. Ct. 93, 33 L. ed. 317; *Lamkin v. Sterling*, 1 Ida. 92; *Chandler v. Lee*, 1 Ida. 349; *People v. Owyhee Min. Co.*, 1 Ida. 409; *Holmberg v. Jones*, 7 Ida. 752, 65 Pac. 563; *Empire Copper Co. v. Henderson*, 15 Ida. 635, 99 Pac. 127; *In re Bossner*, 18 Ida. 519, 110 Pac. 502; *Parsons v. Wrble*, 21 Ida. 695, 123 Pac. 638; *Swain v. Fritchman*, 21 Ida. 783, 125 Pac. 319.)

Were we, however, to grant the correctness of appellant's contention that the assignments by Ponsford and the Thousand Springs Committee to the Thousand Springs Power Company, and the conveyances by the Thousand Springs Land and Transportation Company to Bancroft, by Bancroft to the Thousand Springs Power Company, and by the latter company to the Salt Lake Securities and Trust Company, were all void, nevertheless the appellant is not in position to raise that question to his advantage in this proceeding, for the reason that the option given to Ponsford by the Thousand Springs Land and Transportation Company, Limited, was a conveyance to Ponsford of an equitable interest in all of the property which the appellant herein seeks to subject to his judgment, and a compliance with said option by Ponsford or his associates would vest the equitable title to the property in Ponsford, as of the date of the option, Ponsford having been at no time under legal disability to take title. Acceptance within the time specified of an option to purchase land and compliance with the conditions, if any, changes the option into a contract of sale, binding upon both parties, and entitles the grantee to call for performance, as of the date of the giving of the option, so as to cut off intervening rights

acquired with knowledge of the existence of the option (*Smith v. Bangham*, 156 Cal. 359, 104 Pac. 689, 28 L. R. A., N. S., 522; *Boyden v. Hill*, 198 Mass. 477, 85 N. E. 413; *Jones v. Barnes*, 105 App. Div. 287, 94 N. Y. Supp. 695; *House v. Jackson*, 24 Or. 89, 32 Pac. 1027; *Johnston v. Trippe*, 33 Fed. 530), and possession of the property by the optionee would give notice of the option. It has been held that acceptance of an option takes effect from the date of such acceptance, but the great weight of authority is that acceptance takes effect from the date of the option. (*Smith v. Bangham, supra; Kerr v. Day*, 14 Pa. St. 112, 53 Am. Dec. 526; *Barrett v. McAllister*, 33 W. Va. 738, 11 S. E. 220; *Sizer v. Clark*, 116 Wis. 534, 93 N. W. 539; *Telford v. Frost*, 76 Wis. 172, 44 N. W. 835; *Donnally v. Parker*, 5 W. Va. 301.)

A memorandum reading, "Received of A, $5 as part payment on lots 1 and 2 . . . . conditions as follows, $2,495 to be paid March 20, and balance of $1,500 to run on time, . . . . " with agreement to furnish warranty deed on payment of $2,495, is not an option merely, but is a contract of sale which may be enforced by the buyer until his rights have been terminated by tender of performance by the seller. (*Langert v. Ross*, 24 Pac. 443, 1 Wash. St. 250.)

Where a purchaser under a contract for the sale of realty has performed or offered to perform his covenants at the date provided for a conveyance, equity considers the property as belonging to him as of that date, and that the owner is a mere holder of the legal title in trust for him. (*In re Dwyer's Estate*, 159 Cal. 664, 115 Pac. 235.)

Where real estate is sold under a valid contract, the purchase money to be paid in part and the deed executed at a future day, the equitable title passes at once to the vendee, and equity treats the vendor as a trustee for the purchaser of the estate sold, and the purchaser as a trustee of the purchase money for the vendor, since equity treats things agreed to be done as done. (*Dunn v. Yakish*, 10 Okl. 388, 61 Pac. 926.) Where real estate is agreed to be conveyed by an executory contract of sale without reservation, the equitable title passes at once to the vendee (*Speicher v. Lacy*, 28 Okl.

541, 115 Pac. 271, 35 L. R. A., N. S., 1066), and where a party holding a contract of purchase has, by performance on his part, placed himself in a position to compel specific performance, he holds the equitable title.   (*Smith v. Jones,* 21 Utah, 270, 60 Pac. 1104.)

It will be observed that this option was given to Ponsford and the initial payment of $5,000 was made by Ponsford and his associates, and they went into possession of the property some considerable time prior to the organization of the Thousand Springs Power Company.

In other words, if the title to the property of the Thousand Springs Land and Transportation Company did not pass to Bancroft by reason of the fact that Bancroft was the trustee of the Thousand Springs Power Company, a foreign corporation which had failed to comply with the constitution and statutes of this state governing foreign corporations, the equitable title did pass to Ponsford upon payment by Ponsford and his assignees to the Thousand Springs Land and Transportation Company of the full consideration due them under the terms of the option.

Let us assume that the Thousand Springs Power Company, having failed to comply with the constitution and laws of this state affecting foreign corporations, at the time Ponsford assigned to it his option from the Thousand Springs Land and Transportation Company, and at the time the Thousand Springs Committee assigned to it their interest under the option, was under legal disability and received no title, either legal or equitable, in and to said property, although it made a voluntary payment, through its trustee Bancroft to the Thousand Springs Land and Transportation Company, of the remainder of the purchase price under the terms of the option, and thereby complied with all of the terms and conditions of the option not having theretofore been complied with by Ponsford and his associates. Can it then be contended in equity that such a voluntary payment would defeat the prior transfer of the equitable title from the Thousand Springs Land and Transportation Company to Ponsford, and leave both the legal and equitable

title in the Thousand Springs Land and Transportation Company, when said company had received the full consideration due it under the terms of the Ponsford option? We think not.   Although there are some early authorities to the contrary, it is now well settled that payment of a debt by a stranger, although without the debtor's request, if accepted as such by the creditor, discharges the debt so far as the creditor is concerned.   (*Martin v. Quinn,* 37 Cal. 55; *Phelps v. Beebe,* 71 Mich. 554, 39 N. W. 761; *Bradley v. Lehigh Valley R. Co.,* 153 Fed. 350, 82 C. C. A. 426; *Reynolds v. Crawfordsville First Nat. Bank,* 112 U. S. 405, 5 Sup. Ct. 213, 28 L. ed. 733; 30 Cyc. 1221.)   Upon payment to the Thousand Springs Land and Transportation Company of the full consideration under the terms of the option, whether made in part or in full by Ponsford or by Ponsford's assignee, said company became divested of the equitable title in and to said property, and Ponsford, being at no time disqualified under the constitution and laws of this state to receive title to said property, the same would vest in him as of the date of the option.   By whom the payments under the option were made would be immaterial so long as they were made, and inasmuch as Ponsford made no legal or valid transfer of his option, he did not divest himself of the equitable title.

Even if it be conceded that Bancroft, as trustee of the Thousand Springs Power Company, could not take the legal title to this property from the Thousand Springs Land and Transportation Company, Limited, on June 1, 1911, such concession could not avail appellant under the facts of this case.   For on that date the latter corporation, having received full consideration from Bancroft under the option agreement entered into with Ponsford, parted with the last vestige of its title to Bancroft.   The legal title must then have vested in Bancroft in some capacity.   If appellant's contention be correct that Bancroft could not take the title as trustee for the Thousand Springs Power Company, it must be presumed that he took it in his individual capacity or as trustee for Ponsford.   But in either case the legal title to this property

was upon June 1, 1911, wholly divested from the Thousand Springs Land and Transportation Company, whatever the respective interests accruing to Bancroft and Ponsford might be considered to be. And it was not until June 21, 1911, that appellant began his action wherein he seeks to make his judgment lien attach to this specific property.

In the absence of fraud, the lien of a judgment creditor can attach only to the precise interest which the judgment debtor had in the land at the date of the entry of the judgment, and the lien cannot be made effectual to bind or to convey any greater or other estate than the debtor himself, in the exercise of his rights, could voluntarily have transferred or alienated. (23 Cyc. 1368; *Holden v. Garrett,* 23 Kan. 98; *Millard v. McMullin,* 68 N. Y. 345.; *Hulshoff v. Bowman,* 10 Ohio C. D. 343, 19 Ohio C. C. 554; *Baker v. Morton,* 12 Wall. (79 U. S.) 150, 20 L. ed. 262; *Brown v. Clarke,* 4 How. (45 U. S.) 4, 11 L. ed. 850; *In re Estes,* 3 Fed. 134, 6 Sawy. 459.)

A vendor who has sold and conveyed real estate to a noncomplying foreign corporation and received the purchase price therefor cannot question the right of the corporation to hold the property (*Keating v. Keating Min. Co.,* 18 Ida. 660, 112 Pac. 206; *Katz v. Herrick,* 12 Ida. 1, 86 Pac. 873), but the right to question the validity of such a conveyance is not, in this jurisdiction, limited to the state. In the latter case this court said (12 Ida. 30, 86 Pac. 873): "The right to take and hold title to real property is one that can neither legally nor equitably concern the vendor thereof after he has parted with his title and received the purchase price therefor."

One who has sold, received payment for, and conveyed land to a corporation cannot sue to rescind the conveyance on the ground that the corporation had no power to purchase and hold the land. (*Long v. Georgia Pac. R. Co.,* 91 Ala. 519, 24 Am. St. 931, 8 So. 706; *Holmes & Griggs Mfg. Co. v. Holmes & Wessell Metal Co.,* 127 N. Y. 252, 24 Am. St. 448, 27 N. E. 831.)

Ponsford's option was obtained April 25, 1910; the option was exercised July 5, 1910, and $5,000 was paid on the purchase price to the Thousand Springs Land and Transportation Company by Ponsford and his associates; the legal title was conveyed to Bancroft by said company on June 1, 1911, at which time he (Bancroft) paid the Thousand Springs Land and Transportation Company $7,150 in cash and 285 shares of common stock of the Thousand Springs Power Company, and gave notes for $85,000 dated June 1, 1911, payable on or before June 1, 1921, with interest at 6 per cent per annum; and on the same day Bancroft declared that he held title to the property for the benefit of the Thousand Springs Power Company. Appellant began his action against the Thousand Springs Land and Transportation Company on June 21, 1911, and recovered judgment against said company on June 30, 1913, two years and twenty-nine days after the legal title to the property sought to be subject to the payment of appellant's judgment had been conveyed to the Thousand Springs Power Company, upon payment of the full purchase price therefor. Appellant's judgment, therefore, does not, in our opinion, constitute a lien upon the property, which had been conveyed away prior to the rendition or entry of the judgment.

Under the facts in this case, the Thousand Springs Land and Transportation Company, having sold and parted with the title to all of the property described in the option given to Ponsford and received the purchase price agreed to be paid therefor in full, cannot raise the question that the Thousand Springs Power Company, by reason of its failure to comply with the constitution and laws of this state, could not take or hold title to real estate within this state; and the appellant, as judgment creditor of the Thousand Springs Land and Transportation Company, is in no better position than his judgment debtor, in the absence of fraud on the part of the Thousand Springs Power Company in acquiring title to said property, and therefore cannot successfully subject said property to the payment of his judgment.

From what has been said it follows that the trial court did not err in sustaining the demurrer of the respondents to appellant's complaint. Its judgment must be affirmed, and it is so ordered. Costs are awarded in favor of respondents.

Sullivan, C. J., concurs.

MORGAN, J., Concurring.—The facts alleged in the complaint necessary to a correct understanding of the principal issue of law presented in this case are: That on May 26, 1911, the Thousand Springs Power Company, an Arizona corporation, hereinafter called the power company, made, executed and delivered to Frank N. Bancroft its power of attorney attempting to authorize him to take title in his name, but for its use and benefit, to the property here in controversy, and on June 1, 1911, he took a deed thereto from the Thousand Springs Land & Transportation Company, Limited, an Idaho corporation, hereinafter called the transportation company, and executed a declaration of trust wherein it was stated that the property had been deeded to him, pursuant to the power of attorney, for the use and benefit of the power company. On November 13, 1911, the power company conformed to the laws of Idaho so as to entitle it to transact business and to take and hold title to real property in this state. On December 16, 1911, Bancroft made, executed and delivered to the power company a deed whereby he sought to convey the property to it. On or about January 27, 1912, the Salt Lake Security & Trust Company, a Utah corporation, received from the power company a deed of trust attempting to convey the property to it in order to secure the payment of a bond issue. On June 30, 1913, appellant herein recovered judgment against the transportation company, which is yet unsatisfied, and a transcript of which was, on December, 1914, filed in the office of the county recorder of Gooding county, wherein the property is situated.

It is sought by this action to procure the cancelation of the deeds above mentioned, in order that the property in

question may be sold upon execution and the proceeds thereof be applied in payment of appellant's judgment.

The learned author of the foregoing opinion appears to have proceeded upon the theory that the question involved in this case is: Has the power company a good title? As I understand the question here presented it is: Has the transportation company any interest, of value, in the property which may be subjected to the satisfaction of the claim of its judgment creditor?

In considering that question we must not confuse the deed, which is but evidence of title, with title itself, and we must bear in mind, at all times, that when a deed is taken by a trustee in his own name, equitable title is thereby vested in his *cestui que trust*. With this elementary principle of law in mind the application of that portion of sec. 2792, Rev. Codes, which has a direct bearing upon the case ought not to be difficult. It is as follows: "Such corporation cannot take or hold title to any realty within this state prior to making such filings, and any pretended deed or conveyance of real estate to such corporation prior to such filings shall be absolutely null and void."

It was the manifest purpose of the legislature, in the enactment of that statute, to prohibit foreign corporations from transacting business and from taking or holding title to real property within the state of Idaho prior to filing their articles of incorporation, designating agents upon whom process may be served, and paying the fees required by law, and one of the penalties for their failure so to do is that "any pretended deed or conveyance to such corporation prior to such filings shall be absolutely null and void."

The conclusion is inevitable that the power of attorney from the power company to Bancroft and the deed, for its use and benefit, to him, by the transportation company, and his declaration of trust constitute but one transaction, which amounts to a subterfuge and an effort to do indirectly what the law does not permit directly to be done, to wit, the conveyance of title to real estate to a foreign corporation which has not conformed to the law. Any other construc-

tion of the statute would invite and encourage its violation, by indirection, and render this perfectly plain legislative enactment meaningless.

It seems to me to be entirely clear that the power of attorney, the declaration of trust, the deed to Bancroft and that from him to the power company are void, and that the legal title remains in the transportation company.

It appears that the transportation company has been paid in full for the property and that the power company has, prior to the entry of the judgment in favor of appellant which forms the basis of this action, fully conformed to the laws of this state, and that, ever since having so conformed, it has been and now is empowered to take and hold title to real estate in Idaho. In other words, before appellant's claim attached as a lien to the property, the transportation company had divested itself of its interest in it and the power company had placed itself in position to receive title and, having paid the purchase price in full, became the equitable owner.

The transportation company, having received the purchase price, its relation to the property is that of the holder of the naked, legal title, in trust for the purchaser, and it is divested of all equitable interest, so that it has nothing therein of value to be sold in satisfaction of appellant's judgment. I therefore concur in the conclusion that the judgment of the trial court should be affirmed.

(January 26, 1917.)

ON REHEARING.

FOREIGN CORPORATIONS—AGENTS—TRUSTEES.

1. Sec. 10 of art. 11 of the constitution and sec. 2792, Rev. Codes, as amended, 1915 Sess. Laws, p. 270, prohibits the taking of title by an agent of a foreign corporation in his own name for and on behalf of such corporation, or a trustee appointed by such corporation for that purpose, as effectively as it prohibits the corporation itself from taking such title.

J. B. Eldridge and E. G. Davis, for Appellant.

"If there are statutes which prevent corporations from taking the legal title to lands, they cannot evade the statutes by taking the legal title to trustees and the beneficial interest to themselves; thus they cannot be *cestuis que trust* in lands the legal title to which they are not licensed or enabled to take." (Hill on Trustees, sec. 52; Lewin on Trusts, secs. 19, 36; Perry on Trusts, sec. 63; *Myers Mfg. Co. v. Wetzel* (Tenn. Ch.), 35 S. W. 896; 2 Thompson on Corporations, 2d ed., 695, sec. 1605; 1 Mechem on Agency, 2d ed., sec. 129, p. 90; *Hanna v. Kelsey Realty Co.,* 145 Wis. 276, 140 Am. St. 1075, 129 N. W. 1080, 33 L. R. A., N. S., 355.)

These contracts were void, because in violation of the statute. (*Lindsey v. Rottaken,* 32 Ark. 619, 631; *Chateau v. Singla,* 114 Cal. 91, 94, 55 Am. St. 63, 45 Pac. 1015, 33 L. R. A. 750; *Estate of Groome,* 94 Cal. 69, 29 Pac. 487; *Buck v. Eureka,* 109 Cal. 504, 42 Pac. 243, 30 L. R. A. 409; *Brooklyn Life Ins. Co. v. Bledsoe,* 52 Ala. 538, 551; Bishop on Contracts, arts. 471–547; *Buckley v. Humason,* 50 Minn. 195, 36 Am. St. 637, 52 N. W. 385, 16 L. R. A. 423.)

"A 'void contract' is in fact no contract, since an instrument of that nature does not alter the relations previously existing between the contracting parties, nor will it serve as the foundation of any right." (*Allen v. City of Davenport,* 132 Fed. 209, 65 C. C. A. 641; *Penn v. Bornman,* 102 Ill. 523, 529; Bush on Contracts, sec. 458; *Downs v. Blount,* 170 Fed. 15, 22, 95 C. C. A. 289, 31 L. R. A., N. S., 1076; *Gist v. Smith,* 78 Ky. 367; *Bank of the United States v. Owens,* 2 Pet. (27 U. S.) 527, 539, 7 L. ed. 508, 512.)

The transaction of business by a foreign corporation which had not complied with the laws of the state is unlawful and contrary to state policy, and every contract in furtherance of such business is void. (*Parke, Davis & Co. v. Mullett,* 245 Mo. 168, 149 S. W. 461; *Thomas v. West Jersey R. R. Co.,* 101 U. S. 71, 87, 25 L. ed. 950, 953.)

Longley & Walters and P. B. Carter, for Respondents.

In this state, a contract made with a noncomplying corporation is not void. It is merely unenforceable in any court of this state. (*Valley Lumber & Mfg. Co. v. Driessel,* 13 Ida. 662, 13 Ann. Cas. 63, 93 Pac. 765, 15 L. R. A., N. S., 299; *Tarr v. Western Loan & Savings Co.,* 15 Ida. 741, at 750, 99 Pac. 1049, 21 L. R. A., N. S., 707.)

RICE, J.—A rehearing was granted in this case and the argument on rehearing was had at this term of court. The facts are very fully stated in the original opinion of the court.

Sec. 10 of art. 11 of the constitution and sec. 2792, Rev. Codes, are mandatory. (*Katz v. Herrick,* 12 Ida. 1, 86 Pac. 873; *Dickens West Min. Co. v. Crescent Min. & Mill. Co.,* 26 Ida. 153, 141 Pac. 566.) It is unnecessary to decide in this case whether under sec. 2792, Rev. Codes, a foreign corporation in any case may take title to real estate in Idaho without first filing its articles of incorporation, except as an incident to interstate commerce, since under the facts of this case the foreign corporation was doing business within the purview of the statute and constitution. The taking of title to the Thousand Springs property, assuming such taking of title to be an act of the Thousand Springs Power Company, was not a single isolated transaction, even though it be conceded that it was the first act of doing business. If it was the first act, it was but the first of a series of acts intended to be done by the corporation under its corporate powers. This view is in harmony with the opinion of the supreme court of the United States as expressed in *Cooper Mfg. Co. v. Ferguson,* 113 U. S. 727, 5 Sup. Ct. 739, 28 L. ed. 1137. In the course of its opinion the court says:

"The obvious construction, therefore, of the constitution and the statute is, that no foreign corporation shall begin any business in the state, with the purpose of pursuing or carrying it on, until it has filed a certificate designating the principal place where the business of the corporation is to be carried on in the state, and naming an authorized

agent, residing at such principal place of business, on whom process may be served. To require such a certificate as a prerequisite to the doing of a single act of business, when there was no purpose to do any other business or have a place of business in the state, would be unreasonable and incongruous.''

The cases holding that a single isolated transaction is not to be considered doing or carrying on of business within the state are cases where the matter involved was a single transaction without any intention on the part of the foreign corporation of continuing to transact other acts of business within the state. (See *Commercial Bank v. Sherman*, 28 Or. 573, 52 Am. St. 811, 43 Pac. 658; *Meddis v. Kenney*, 176 Mo. 200, 98 Am. St. 496, 75 S. W. 633; *Florsheim Bros. Dry Goods Co. v. Lester*, 60 Ark. 120, 46 Am. St. 162, 29 S. W. 34, 27 L. R. A. 505; *Keene Guaranty Sav. Bank v. Lawrence*, 32 Wash. 572, 73 Pac. 680; *Miller v. Williams*, 27 Colo. 34, 59 Pac. 740; *Livestock Commission Co. v. Haston*, 68 Kan. 749, 75 Pac. 1028.)

Such cases are to be distinguished from those where the act complained of was one of a series of transactions intended to be performed within the state. (See *Deere Plow Co. v. Wyland*, 69 Kan. 255, 2 Ann. Cas. 304, 76 Pac. 863; *Farrior v. New England Mortgage Security Co.*, 88 Ala. 275, 7 So. 200; *Chattanooga Nat. Bldg. & Loan Assn. v. Denson*, 189 U. S. 408, 23 Sup. Ct. 630, 47 L. ed. 870.)

It is claimed, however, that the statute applies to foreign corporations only, and does not prohibit the taking and holding of title to realty by trustees for the use and benefit of such corporations, and does not render null and void deeds and conveyances to such trustees; that the statute is penal in its nature and should be strictly construed. The rule of construction to be applied to all our statutes is found in sec. 4, Rev. Codes, which provides that ''the rule of the common law that statutes in derogation thereof are to be strictly construed has no application to these Revised Codes. The Revised Codes establish the law of this state respecting the subjects to which they relate, and their provisions and all

proceedings under them are to be liberally construed, with a view to effect their objects and to promote justice.'' The rule of strict construction is one used in determining what the real intent and object of the law is in cases where it is properly applicable. The law under consideration, however, is not properly considered a penal statute of such a nature that the rule of strict construction may be invoked. Foreign corporations have no natural or inherent right to carry on business in any state other than that in which they are organized. (*Paul v. Virginia,* 8 Wall. (75 U. S.) 168, 19 L. ed. 357; *Bank of Augusta v. Earle,* 13 Pet. (38 U. S.) 519, 10 L. ed. 274; *Fritts v. Palmer,* 132 U. S. 282, 10 Sup. Ct. 93, 33 L. ed. 317.) Statutes prescribing the terms upon which a foreign corporation may carry on business within the borders of a state, strictly speaking, are statutes granting a privilege.

In this case Bancroft took the deed in his own name as agent for the Thousand Springs Power Company. He acted under a power of attorney executed by the company, and immediately upon receiving the deed executed a declaration of trust to the effect that he held the property in trust for the use and benefit of the said company. According to the record he had no personal interest in the property. His action was the action of the company. The trust resulting from such a transaction would have been a passive trust and the Thousand Springs Power Company for all intents and purposes would have been the absolute owner of the property. A prohibitory statute providing that such foreign corporation cannot take or hold title to any realty within this state prior to making the filing required by the statute must be construed to mean any title. The mere agent of such foreign corporation cannot be permitted to take title in himself for the use and benefit of such corporation. Such a transaction would be a palpable evasion of the statute. Bancroft's deed, therefore, was void.

There is nothing in the case of *Keating v. Keating Min. Co.,* 18 Ida. 660, 112 Pac. 206, inconsistent with this view. In that case Keating conveyed the title to one Watson. Watson was not at the time of the conveyance to him, nor at any other

time, trustee for a foreign corporation. At the time title to the property was conveyed to him he was under no disability and was competent to acquire and hold the title. The court's opinion was based in the first instance upon the ground that the contract for the sale of said mining claims (to Watson) was a legal valid contract, procured without conspiracy or fraud on the part of the defendants, and that Keating had accepted and received the entire purchase price therefor. The court also held that Keating was estopped by his laches in any case from maintaining the action. The defendants in this case were not entitled to rely upon the decision in the Keating case as a rule of property by which to justify their course of action.

All this, however, cannot avail the plaintiff and appellant. He comes into a court of equity seeking to set aside the conveyance of the Thousand Springs Land & Transportation Company to Bancroft, and of Bancroft to the Thousand Springs Power Company, also the trust deed of the Thousand Springs Power Company to the Salt Lake Security & Trust Company, and to have the property subjected to the lien of his judgment. The lien of the judgment attaches only to the real interest which the judgment debtor has at the time the lien becomes operative, and is subject to all equities, secret or latent. The plaintiff in this case is in the same position as a purchaser from the Thousand Springs Land & Transportation Company with full knowledge of all existing legal or equitable rights belonging to third persons. (Freeman on Judgments, sec. 357.) A judgment creditor cannot be considered a *bona fide* purchaser for value. (*Holden v. Garrett,* 23 Kan. 98.) And, since a privity in estate exists between a judgment debtor and a judgment creditor claiming under the lien of his judgment, this principle applies to cases of equitable estoppel, as well as to defects in title. (*Key West Wharf etc. Co. v. Porter,* 63 Fla. 448, Ann. Cas., 1914A, 173, 58 So. 599; *McCravey v. Remson,* 19 Ala. 430, 54 Am. Dec. 194; *Hasenritter v. Kirchhoffer,* 79 Mo. 239; *Bliss v. Tidrick,* 25 S. D. 533, Ann. Cas. 1912C, 671, 127 N. W. 852, 32 L. R. A., N. S., 854.)

It is conceded by appellant that the Thousand Springs Land & Transportation Company could not obtain the relief prayed for in this case. He who seeks equity must do equity. Having received full consideration for the transfer, it could not now obtain from a court of equity the affirmative relief of a cancelation of its deed. (*Tarr v. Western Loan & Sav. Assn.*, 15 Ida. 741, 99 Pac. 1049, 21 L. R. A., N. S., 707; 1 Pom. Eq. Juris., sec. 391; *George v. New England Mortgage Security Co.*, 109 Ala. 548, 20 So. 331; *Cox v. Railway Bldg. & Loan Assn.*, 101 Tenn. 490, 48 S. W. 226; 9 C. J. 1207, sec. 93; Id. 1218, sec. 114. And compare following cases cited in the original opinion: *Long v. Georgia Pac. Ry. Co.*, 91 Ala. 519, 24 Am. St. 931, 8 So. 706; *Holmes & Griggs Mfg. Co. v. Holmes & Wessell Metal Co.*, 127 N. Y. 252, 24 Am. St. 448, 27 N. E. 831.) The appellant is in no better position.

There is another reason why the plaintiff cannot prevail. The Ponsford option, as it appears from the record in this case, was valid and was made by parties laboring under no disability. The option was not abandoned by either of the parties to it. Abandonment implies union of act and intent. There was no intent to abandon the option by either party. This option created an equitable estate in Ponsford. It would seem that the attempted assignment of the option by Ponsford and his associates to the Thousand Springs Power Company was null and void, leaving the option unaffected thereby. The full consideration called for under the option, as modified with the consent of the company, having been paid and accepted as a fulfilment of its terms as so modified, the Thousand Springs Land & Transportation Company parted with its entire equitable interest in the property mentioned therein.

It follows that the judgment pronounced by this court should stand and that the judgment of the district court should be affirmed.

BUDGE, C. J., Concurring in Part and Dissenting in Part. I adhere to the views expressed in the majority opinion in

this case heretofore handed down by this court and filed on December 2, 1916, and concur in the opinion of Justice Rice in so far as the views expressed by him are in harmony with the majority of the court in that opinion, and expressly dissent from the views expressed therein that are not in harmony therewith.

MORGAN, J., Concurring.—I adhere to the views expressed in my concurring opinion heretofore filed.