551 P.2d 1332

**H. E. GARMO and Vivian G. Garmo, husband and wife, Plaintiffs-Appellants,**

v.

**Frederick A. CLANTON, Executor of the Estate of Ella R. Thompson, aka Ella Rose Thompson, Deceased, et al., Defendants-Respondents.**

**No. 11870.**

Supreme Court of Idaho.

July 13, 1976.

Charles H. Kimball, Coeur d'Alene, for plaintiffs-appellants.

Jon Karl Hammarberg, of Bandelin & Associates, Sandpoint, Robert E. Brown of

Brown, Peacock, Keane & Boyd, Kellogg, William G. Ennis, of Ennis & Klobucher, Spokane, Wash., for defendants-respondents.

McFADDEN, Chief Justice.

This is an appeal from a judgment granting defendants-respondents, Carl and Nelda Carbon, and Virginia D. Sather, an option to purchase certain real property from the estate of Ella R. Thompson for the price of $4500.00 to be paid to the estate. This Court affirms the judgment in part, reverses the judgment in part and remands the case for further proceedings.

James E. Thompson and Ella R. Thompson, husband and wife, both now deceased, owned certain real property bordering Priest Lake. In 1948, they conveyed a portion of this property to Carl Carbon and Maxwell Sather. The contract conveying the property contained the following provision:

"A narrow strip of land belonging to Vendors adjoins the tract covered hereby on the North which strip along the lake front is so close to the North boundary of Vendor's land as not to be available for building purposes. Vendors will use all reasonable effort to procure by exchange of other lands or otherwise from the owners of land abutting said strip on its northerly side additional ground which when added to said strip will make it available for use. Vendors hereby grant to Purchasers the first right to purchase said strip together with said additional land when as and if obtained by them and will not sell said strip to any other Purchaser without first giving to the Purchasers hereunder notice of such sale and opportunity to exercise the option herein contained at a price no higher than offered by any other person."

The contract was not recorded. The subject of this provision, a 42 foot wide strip, is bordered by Department of Agriculture (Forest Service) land on the north, the lake on the east, a lot and home owned by Carbon on the south, and a road on the west.

The Thompsons also owned property above the road which formed the west boundary of the 42 foot strip. This property was located to the west of and upland from the lakefront lots and was separated from the lakefront lots by the aforementioned road. This Thompson property consisted of two parcels, a 15 acre parcel, and an 18 acre parcel. The 15 acre parcel was situated directly above the 42 foot strip and the lakefront lots conveyed to Carbon and Sather.

In January, 1965, James E. Thompson entered into negotiations with plaintiff-appellant, H. E. Garmo, to sell the two upland parcels, a lot with two hundred feet of lake frontage, and the 42 foot wide strip. H. E. Garmo testified that he intended to subdivide the upland parcels and that he needed the 42 foot strip for a dual purpose—for beach access, and for a site for a pumping station to provide domestic water from the lake for the upland parcels. J. E. Thompson and H. E. Garmo signed an informal preliminary agreement [1] on January 28, 1965, whereby Thompson agreed to sell the four parcels to Garmo for $35,000.00.

Garmo admitted in his answer to Carbon and Sather's counterclaim that he became aware of the 1948 agreement prior to September, 1965. The district court found that he acquired actual knowledge of the 1948 agreement in January, 1965.

Thompson and Garmo entered into several agreements relative to the four parcels in September, 1965. According to an unsigned memorandum dated September 19, 1965, in H. E. Garmo's handwriting, J. E. Thompson agreed to sell the upland parcels and the lot with two hundred feet of lake frontage to Garmo for $35,000.00, to will

---

1. Ella R. Thompson, wife of J. E. Thompson, did not sign or acknowledge this informal agreement.

the 42 foot strip to Garmo, and to grant to Garmo an easement over the 42 foot strip for twenty-five years, use of this easement to begin five years from the closing date of the sale. On September 27, 1965, the Garmos and the Thompsons signed a "Sale Agreement" whereby Thompson agreed to sell to Garmo the two upland. parcels and the two hundred foot lake frontage for $35,000.00. Also, on September 27, the Thompsons executed an agreement whereby they granted to the Garmos an easement to build a road and to lay and maintain water lines across the 42 foot strip. This easement was to begin five years from September 27, 1965, and was to continue for twenty-five years. The Thompsons also executed an "Agreement to Devise Realty" on September 27, 1965. This agreement contained the following clause,

"Whereas, because of an agreement we apparently entered into in 1948 which we believe to be ineffectual but which could cause us problems at a time when neither of us can stand the pressure of controversy and hence are unwilling to offer said strip for sale to anyone."

and provided that the Thompsons would devise to the Garmos the 42 foot strip upon the death of the surviving spouse. These documents were recorded in 1971.

The Thompsons and the Garmos also entered into an agreement, dated October 11, 1965, whereby they agreed that

"In the event suit be brought against James E. Thompson and Ella Thompson or H. E. Garmo and Vivian Garmo or any of them arising out of the instrument dated November 30, 1948, H. E. Garmo and Vivian Garmo as one party and James E. Thompson and Ella Thompson as the second party agree that the parties shall each bear one-half of the expense of defending such suit or action and if liability be established, pay equally the amount of said judgment."

James E. Thompson died; he devised his interest in the 42 foot strip to his wife, Ella Thompson. By her will, Ella Thompson, upon her death, devised the 42 foot strip to Jonathan James Powell, her grandson.

Garmo instituted this action seeking specific performance of the agreement to devise and to quiet title of the 42 foot strip. Carl Carbon, Maxwell Sather, Frederick A. Clanton, as the executor of the estate of Ella Thompson, James A. Thompson, deceased, and Jonathan James Powell were named as defendants. Garmo also sought damages against the estate of Ella R. Thompson for breach of the agreement to devise. Carbon and Sather [2] filed a counterclaim against Garmo and a cross-claim against Clanton, as executor of Ella Thompson's estate, seeking to have the court determine what portion of the $35,000.00 sale price of the Thompson-Garmo agreement was attributable to the 42 foot strip and to have the court order Clanton to extend to Carbon and Sather the option to purchase the 42 foot strip at that price.

After a trial to the court, the district court entered its memorandum opinion, which was adopted as findings of fact and conclusions of law. The court found that the 1948 agreement was definite and certain and that the agreement provided "Thompson would not sell the 42 foot strip to any other purchaser without first giving Carbon and Sather an opportunity to buy at a price no higher than that offered to any other person". The court ruled that Garmo "had actual knowledge of the Carbon-Sather option on the 42 foot strip in January, 1965". The court also found that the fair market value of the 42 foot strip in 1965 was $4,500.00. The district court entered judgment giving Carbon and Sather the right to exercise an option to purchase the 42 foot strip by payment of $4,500.00 to the Ella Thompson estate.

2. Prior to the institution of this action, Maxwell Sather died and his wife, Virginia Sather, succeeded to his rights in the 42 foot strip.

Carbon and Sather timely exercised the option. The district court then dismissed Garmo's complaint with prejudice. Garmo appealed from the judgment entered and the order dismissing the complaint.

On appeal, Garmo argues that Carbon and Sather did not acquire any rights enforceable against him by the 1948 agreement. He proposes a two-pronged argument—(1) the 1948 agreement allows Carbon and Sather the option to acquire the 42 foot strip if, and only if, Thompson acquired the Forest Service property bordering the strip on the north, and (2) because the 1948 agreement did not establish a purchase price for the strip, the agreement was not sufficiently definite so as to be enforceable.

▇ The 1948 agreement provided that the Thompsons

> "* * * will not sell said strip to any other Purchaser without first giving to [Carbon and Sather] notice of such sale and opportunity to exercise the option herein contained at a price no higher than offered by any other person."

It is the conclusion of this court that the clear and unambiguous language of the 1948 agreement gave Carbon and Sather preemptive right of first refusal if the 42 foot strip was offered for sale and so the district court did not err by so finding.[3] See, *Parks v. City of Pocatello*, 91 Idaho 241, 419 P.2d 683 (1966); *Durant v. Snyder*, 65 Idaho 678, 151 P.2d 776 (1944).

▇ Garmo also asserts that the 1948 agreement is not enforceable because the agreement was not sufficiently definite as to the price at which the 42 foot strip was to be sold to Carbon and Sather. To be enforceable by a court, a contract must provide for a definite price or for a means of determining the price.

> "* * * If the parties provide a practicable, objective method of determining * * * [the] price of compensation,

not leaving it to the future will of the parties themselves, there is no such indefiniteness or uncertainty as will prevent the agreement from being an enforceable contract." 1 Corbin on Contracts, § 97, p. 424 (1963)

If the parties failed to establish a definite option price then they must "specify [in the agreement] a practicable method by which the amount can be determined by the court without any new expression by the parties themselves." 1 Corbin, *supra*, § 98, p. 434. Thompson, in January, 1965, entered into a preliminary agreement with Garmo whereby he offered to sell the 42 foot strip and several other parcels for $35,000.00. At this point, Thompson became obligated to offer the 42 foot strip to Carbon and Sather; however, at this time Thompson did not set a definite price for the 42 foot strip. Garmo and Thompson then entered into the agreements of September, 1965, which were apparently an attempt to circumvent the contractual duties imposed upon Thompson by the 1948 agreement. Under the circumstances, a court could reasonably find that the 42 foot strip was offered for sale at its fair market value and fix the price accordingly. See *Wilson v. Brown*, 5 Cal.2d 425, 55 P.2d 485 (1936); *Brenner v. Duncan*, 318 Mich. 1, 27 N.W.2d 320 (1947). Thus it was not error for the district court to find that the 1948 agreement established an enforceable preemptive right of first refusal.

▇ Garmo argues, that by entering into the January, 1965 preliminary agreement without knowledge of the unrecorded 1948 agreement, he acquired a superior right as to Carbon and Sather. If the January, 1965, agreement was an enforceable contract, this agreement was only an executory contract. The record does not suggest that either party parted with any consideration or rendered any performance until September. Under the September agreements, Garmo may claim only an easement

---

3. Garmo does not argue and this court has not considered the issue of the applicability of the statutory prohibition against suspen-

sion of the power of alienation. I.C. § 55–111.

over the 42 foot strip and a right to have the strip devised to him. Garmo parted with his consideration (down payment and a promise to pay the balance) when he had actual knowledge of the 1948 agreement and so he cannot claim to be a bona fide purchaser without notice and therefore with rights superior to Carbon and Sather. 8 Thompson on Real Property § 4321 (1963). See, I.C. § 55–606 and I.C. § 55–812; *Langroise v. Becker,* 96 Idaho 218, 526 P.2d 178 (1974); *Donaldson v. Thousand Springs Power Co.,* 29 Idaho 735, 162 P. 334 (1916).

Garmo also asserts that the district court erred by finding that the fair market value of the 42 foot strip was $4,500.00 in 1965. He contends that the price should be determined according to value of the strip as beach access to the upland property which Garmo testified he intended to subdivide. However, he presented no expert testimony as to the strip's value as beach access to the upland property. Carbon and Sather presented the testimony of an expert witness, qualified as an appraiser, who testified that the fair market value of the lot in 1965 was $4,500.00. His opinion did not take into consideration the value of the strip as beach access. It is the conclusion of this court that, upon the basis of the record before it, the district court did not err by finding the value of the strip to be $4,500.00 in 1965. I.R.C.P. 52(a).

Judgment affirmed as to the granting of the option to respondents, Carbon and Sather, to purchase the 42 foot strip for $4,500.00. Judgment reversed as to the dismissal with prejudice of appellants, the Garmos', claim for relief against the estate of Ella Thompson for damages from the alleged breach of the agreement to devise and cause remanded for consideration by the district court of Garmo's claim of a breach of the agreement to devise. No costs allowed.

DONALDSON, SHEPARD and BAKES, JJ., and SCOGGINS, D. J. (Retired), concur.